IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SHIKWAN SUNG, | ) | CV. NO. 09-00212  DAE-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT EMMETT HAMILTON and SUSAN WEINERT HAMILTON, each individually and as Trustee under The Hamilton Joint Revocable Trust dated March 7, 1991; HULA BROTHERS, INC., a Hawai`i corporation; GREGORY GADD; TITLE GUARANTY ESCROW SERVICES, INC., a Hawaii corporation; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; AND DOE GOVERNMENTAL AGENCIES 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On November 30, 2009, the Court heard Plaintiff/Counterclaim-

Defendant's Motion for Partial Summary Judgment.  Ke-Ching Ning, Esq.,

appeared at the hearing on behalf of Plaintiff/Counterclaim Defendant; Kelvin H.

Kaneshiro, Esq., Peter S. Knapman, Esq., and Charles A. Price, Esq., appeared at the hearing on behalf of Defendants.  After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS IN PART AND DENIES IN PART Plaintiff/Counterclaim Defendant's Motion.

<u>BACKGROUND</u>

This Court repeats the background facts only as is necessary for a decision on Plaintiff/Counterclaim-Defendant's ("Plaintiff's) Motion for Partial Summary Judgment ("MPSJ," Doc. # 30) in the discussion section below.  The essential facts of this case are not in dispute.

Defendants Robert Emmett Hamilton and Susan Weinert Hamilton (the "Hamiltons") are trustees under The Hamilton Joint Revocable Trust dated March 7, 1991 ("Hamilton Trust").   (Defendants Robert Emmett Hamilton, Susan Weinert Hamilton, and Hula Brothers, Inc.'s Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment "Hamilton Opp'n," Doc. # 38, Ex. 1.)  Under the terms of the Hamilton Trust, either trustee is empowered to act to bind the trust without obtaining the consent of the other trustee.  (<u>Id.</u> at 16.)  As of February 2008, the Hamiltons as trustees of the Hamilton Trust (the "Trustees") owned about 31.174 acres of land identified as Lot 33-B-2 of Land Court Application 1053 (amended), Keaau, District of Puna, Hawai`i, (TMK [3]

2

1-6-003:104) and an appurtenant 7,500 square foot warehouse and fruit orchard (together, the "Property").  (See Hamilton Opp'n, Ex. 2 at H00046; Plaintiff's Complaint "Compl." at ¶ 11, Doc. # 1.)

On both February 12, 2008 and February 13, 2008, Plaintiff and the Trustees signed an "Agreement for Keaau Property (TMK [3] 1-6-003-0104) which provided Plaintiff an option to purchase the Property (the "Property Option") for $2.9 million.  (Compl. ¶ 12; MPSJ, Ex. A at 1.)  The Property Option stated that Defendant Hula Brothers, Inc. ("Hula Brothers"), a fruit packing business on the Property owned and operated by the Hamiltons, would enter into an agreement with Plaintiff to provide Plaintiff the option to acquire the assets of Hula Brothers.  (MPSJ at 7, ¶ 3.4.)

On or around February 12, 2008, the Plaintiff, Trustees and Robert Emmett Hamilton individually ("Robert Hamilton") agreed upon an "Agreement for Hula Brothers, Inc. Assets" (the "Asset Option"), which provided Plaintiff with an option for the purchase of Hula Brothers' assets, including a forklift, for $100,000  (MPSJ, Ex. B at 3, ¶ 1.2(a); Compl. ¶ 12; MPSJ, Ex. A ¶ 3.4.; MPSJ, Ex. B.)  At the time of agreement, February 12, 2008, the Asset Option was signed only by Plaintiff.  (Compl. ¶ 12; MPSJ, Ex. B at 16.)

3

The Property Option provided that it may be exercised by Plaintiff not later than 5:00 p.m. Hawaii Standard Time, September 15, 2008 by delivering to the Trustees a signed written copy of (a) an offer to purchase the Property; and (b) a check payable to escrow Title Guaranty Escrow Services, Inc. ("TGES") in Hilo c/o Michael Nagai for $280,000.  (MPSJ, Ex. A at 2, ¶¶ 1-1.1.)  The Property Option specified that Plaintiff may deliver written notice of his exercise by facsimile or other electronic transmission with a confirming copy sent at the same time by authorized delivery methods, provided that Plaintiff "shall also make the timely tender" of the $280,000.  (Id. at 2, ¶ 1.1.)  The Property Option stated that if Plaintiff exercised his Property Option, "the [Trustees] shall in or within ten (10) days execute and deliver the purchase document provided in Paragraph 1.2 herein and open escrow."  (Id. at 6, ¶ 3.)  The Property Option further provided that if the Property Option was not timely exercised as provided: "it shall expire and be of no further force or effect at the end of the option exercise period described in paragraph 1 and the option payment hereunder may be retained by the [Trustees]." (Id. at 5, ¶ 1.4.)

The Asset Option provided that the Asset Option may be exercised by Plaintiff not later than 5:00 p.m. Hawaii Standard Time, September 15, 2008 by delivering to the Trustees a signed written Notice of Intent to purchase the Hula

4

Assets and a check as a deposit payable to escrow TGES in Hilo c/o Michael Nagai

for $20,000.  (MPSJ, Ex. B at 2, ¶¶ 1-1.1.)  The Asset Option further provided that

if the Asset Option was not timely exercised as provided: "it shall expire on the

expiration of the option exercise period described in paragraph 1 and shall be of no

further force or effect."  (Id. at 4, ¶ 1.4.)

　　　　Both the Purchase Option and the Asset Option provided for

simultaneous closing dates and provided that no party shall have any obligation to

deliver any document or take any action contemplated by either agreement unless

the Closing on the Asset Option occurred simultaneously with closing on the

Property Option.  (MPSJ, Ex. A at 7, ¶ 3.4; id., Ex. B at 9, ¶ 7.4.)  Closing of

escrow on both the Property Option and the Asset Option was to occur no later

than March 9, 2009.  (Id., Ex. A at 6, ¶ 3.1; id., Ex. B at 8, ¶ 7.1.)

　　　　On September 15, 2008, Plaintiff executed an offer to purchase the

Property ("DROA"), initialing and dating every page except page 3, which was left

undated.  (MPSJ, Ex. C.)  Plaintiff made and initialed changes to the DROA by

writing and crossing out "Komatsu Forklift" from the property excluded from sale

in paragraph C-4 and adding "Komatsu Forklift, including farm equip." to the

items included in the sale in paragraph C-3.  (Id. at 3, ¶¶ C-3-4; Compl. at 9, ¶ 27.)

On September 16, 2008, Plaintiff wired the sum of $280,000.00 to Bank of Hawaii

for the Benefit of TGES.  (MPSJ, Ex. D.)  On September 16, 2008, TGES accepted

the $280,000 from Plaintiff, opened escrow pursuant to the Property Option and

continues to hold this amount in escrow deposit.  (Id., Ex. E; id., Ex. A at 6, ¶ 3;

TGES' Answer ¶ 2.)  TGES provided Plaintiff the Escrow Instructions and General

Provisions.  (MPSJ, Ex. E.)  Plaintiff did not exercise the Asset Option.  (Plaintiff's

Reply Memorandum "Reply Mem." at 1; Hamilton Opp'n at 4.)

        The Hamiltons received the DROA on September 16, 2008.  ((The

Defendants Robert Hamilton, Susan Weinert Hamilton, and Hula Brothers'

Response to Plaintiff's Concise Statement of Facts "Hamiltons' Resp. to Plaintiff's

Facts" at 5, ¶ 19, 20; Hamilton Opp'n at 4.)  The parties dispute when Susan

Weinert Hamilton ("Susan Hamilton") signed the DROA.   Plaintiff states that

Susan Hamilton did not sign the DROA until October 1, 2008.  (Plaintiff's Concise

Statement of Facts ("Plaintiff's Facts") at 5, ¶¶ 21-22.)  In contrast, Defendants

Robert Hamilton, Susan Hamilton, and Hula Brothers (the "Hamilton Defendants")

state that the DROA bears Susan Hamilton's signature and is dated September 16,

2008.  (Hamiltons' Resp. to Plaintiff's Facts at 5, ¶¶ 21-22.)  Both parties agree

that on September 16, 2008, Robert Hamilton signed the DROA and initialed and

dated each page, except for page 3, which contained the changes to paragraphs C-3

and C-4.  (MPSJ, Exhibit C.)  Page 3 of the DROA bears the initials of the

Hamiltons and a date of October 1, 2008.  (Id. at 3.)

          In their acceptance, the Hamiltons crossed out Plaintiff's changes to

paragraph C-3, the "Komatsu Forklift, including farm equip." and initialed their

deletion.  (Id.)  The Hamilton Defendants contend that the inclusion of the forklift

was not in conformance with the Property Option, but was agreed to under the

Assets Option.  (Id.; id., Exhibit A at 7, ¶ 3.4; id., Exhibit B at 3, ¶ 1.2(a).)  The

Hamiltons' deletion of Plaintiff's addition of the "Komatsu Forklift, including farm

equip." was never initialed or accepted by Plaintiff.  (MPSJ, Exhibit F.)  The

Trustees and Robert Hamilton signed the Assets Option on February 26, 2009.

(MPSJ, Exhibit B at 15-16.)

          On May 12, 2009, Plaintiff filed a Complaint for declaratory judgment

(Count I), breach of contract and anticipatory breach (Count II), rescission (Count

III), and unjust enrichment (Count IV) against the Hamilton Defendants.  (Compl.

at 15-17, ¶¶ 52-63.)  Additionally, Plaintiff alleged conversion (Count V) against

the Hamiltons and TGES (Id. at 18, ¶¶ 64-69.); misrepresentation (Count VI) and

fraudulent misrepresentation (Count VII) against Robert Hamilton, Hula Brothers,

Gregory Gadd and the Big Island Land Co., Ltd. ("BILC") (Id. at 18-21, ¶¶ 70-

80.); fraudulent concealment (Count VIII) and negligent and intentional

7

interference with contract and prospective advantage (Count IX) against the

Hamilton Defendants, Gregory Gadd and BILC (Id. at 21-23, ¶¶ 81-89.); a

declaratory judgment (Count X) and breach of contract (Count XI) against TGES

(Id. at 23-4, ¶¶ 90-95.); and breach of implied covenant of good faith and fair

dealing (Count XII), HRS Chapter 480 - unfair or deceptive acts or practices

(Count XIII), negligence (Count XIV), conspiracy (Count XV), and punitive

damages (Count XVI) against all defendants.  (Id. at 24-27, ¶¶ 96-112.)

On June 2, 2009, TGES filed a cross-claim ("Crossclaim") against the

Hamilton Defendants, Gregory Gadd and BILC alleging non-liability and

requesting indemnification, escrow costs, costs of suit and attorneys' fees, inter

alia.  On June 17, 2009, the Hamilton Defendants counterclaimed against Plaintiff

alleging Plaintiff caused damage to the Property, that the Hamiltons are entitled to

retain the $20,000.00 lease amount paid by Plaintiff, and that the monies held in

escrow by TGES be applied toward these amounts.  (Counterclaim at 7.)

On August 20, 2009, Plaintiff filed a Motion for Partial Summary

Judgment ("MPSJ," Doc. #30) and Concise Statement of Facts ("Plaintiff's Facts,"

Doc. # 31) on Counts I, III, V, and X of Plaintiff's Complaint.[1]  On September 3,

---

[1]Plaintiff also seeks summary judgment on portions of TGES's Crossclaim against the remaining defendants.  However, Plaintiff may not do so as Plaintiff is
(continued...)

2009, BILC and Gregory Gadd submitted a Statement of Position to Plaintiff's Motion for Partial Summary Judgment joining "the Memorandum in Opposition to Plaintiff's motion filed by the other Defendants in this action."  (Doc. # 34.)

On September 3, 2009, the Hamilton Defendants filed their Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Hamilton Opp'n Doc. # 38.), a Response to Plaintiff's Concise Statement of Facts ("Hamilton Resp. to Plaintiff's Facts," Doc. # 37), and a Concise Statement of Facts ("Hamilton Facts," Doc. # 36.)  TGES then filed a Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment in which it requested this Court deny Plaintiff's motion with respect to TGES, but took no position with respect to whom the funds in escrow are distributed but requested that its reasonable attorneys' fees and costs be paid prior to distribution of the escrow funds to either party.  (Doc. # 41.)  TGES also filed a separate Concise Statement of Facts.  (Doc. # 42.)  On September 10, 2009, Plaintiff filed a reply in support of his motion.  ("Reply Mem.," Doc. # 44.)

---

[1](...continued)
not a party to TGES' crossclaim.

<u>STANDARD OF REVIEW</u>

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at 323.  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp.</u>, 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  <u>Porter</u>, 419 F.3d  at 891 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256

10

(1986)).  If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party.  T.W. Electrical Service, 809 F.2d at 632.

## DISCUSSION

Plaintiff claims that he is entitled to judgment as a matter of law that: (1) Plaintiff is entitled to the $280,000 held in escrow because: (a) no contract was formed; or (b) rescission is appropriate for any valid contract because of Hamilton Defendants' actions; (2) Plaintiff is entitled to rescission of the lease agreement with the Hamiltons; (3) TGES and the Hamiltons wrongfully refuse to return the $280,000 held in escrow to Plaintiff; and (4) TGES did not have authority to open escrow and Plaintiff is not responsible for any escrow fees or other sums sought by TGES in connection with the escrow.  (MPSJ at 3; Compl. at 15-23.)

The Hamilton Defendants deny that Plaintiff is entitled to the $280,000 in escrow, return of the $20,000 lease payment, and that the Hamiltons' refusal to agree to release the $280,000 from escrow was wrongful.  (See Hamilton Opp'n.)  The Hamilton Defendants requested a continuance of the hearing pursuant to Fed. R. Civ. P. 56(f) to allow discovery related to what and when documents or information was available to Plaintiff.  (Hamilton Defendants' Opp'n at 18.)

11

Because the Court found such information is not essential for the   purposes of the instant motion, the request was denied without prejudice.[2]   (Doc. # 50.)

TGES denies Plaintiff's claims with respect to TGES' wrongful withholding of the $280,000 in escrow, TGES' lack of authority to open escrow, and Plaintiff's lack of responsibility for any escrow fees or other sums sought by TGES in connection with the escrow.  (See TGES Opp'n at 3-4, 7-9.) TGES takes no position with respect to whom the funds in escrow are distributed but requests that its reasonable attorneys' fees and costs be paid prior to distribution of the escrow funds to either party.  (Id. at 9.)

---

[2]Plaintiff also requests that Hamilton Defendants' "failure to admit facts not in controversy" in their Answer should be treated as admissions pursuant to Fed. R. Civ. P. 8(b).  (MPSJ at 8, 10-11.)  Hamilton Defendants deny that the responses in their Answer are improper or insufficient (Hamilton Opp'n at 12-15), or that they are barred from asserting ownership over the $280,000 in escrow.  (Id. at 16-17.)  Federal Rule of Civil Procedure 8(b) allows defendants great latitude in responding to the allegations in a plaintiff's complaint.  Hamilton Defendants' Answer is adequate in responding to Plaintiff's Complaint.  Moreover, the facts submitted for the purposes of the instant motion are adequate on which to decide address the issues raised.  (See Hamilton Resp. to Plaintiff's Facts; Hamilton Facts.)  Accordingly, Plaintiff's request to treat Hamilton Defendants' "failure" to admit facts not in controversy in their Answer as admissions is DENIED.

I.      Existence of a Contract

The Hamilton Defendants have failed to raise any genuine issue of material fact as to the ownership of Plaintiff's $280,000 escrow deposit. Therefore, the Court may decide this motion as a matter of law.

A.      Exercise of the Property Option

The instant action was filed in the District of Hawaii pursuant to 28 U.S.C. 1332, diversity jurisdiction.  Therefore, this Court is required to look to the substantive law of Hawai`i.  Erie R.R. v. Tompkins, 304 U.S. 64 (1938).  Sales of land are governed by the law of the state within which it is located.  In re Grayco Land Escrow, Ltd., 559 P.2d 264, 274 (Haw. 1977).  In the absence of controlling state law, a "federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the case."  Takahashi v. Loomis Armored Car Serv., 625 F.2d 314, 316 (9th Cir. 1980).  "In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions."  Id.

An option contract is a right, which acts as a continuing offer, given for consideration, to purchase or lease property at an agreed upon price and terms, within a specified time.  Arthur v. Sorensen, 907 P.2d 745, 752 (Haw. 1995) (citing Black's Law Dictionary 1094 (6th ed. 1990) (citations omitted); see also In

13

re Estate of Damon, 689 P.2d 204, 208 (Haw. 1984) (defining "option to purchase real property"). An optionee must accept ("exercise") the offer contained in the option unconditionally and according to the terms of the option. Restatement (Second) of Contracts § 45 (2). If an option agreement requires exercise of the option to be completed within a specified time or in a specified manner, the option must be exercised in exact compliance therewith, or exercise is ineffective unless the optionor waives one or more terms of the offer. Id.; Cummings v. Bullock, 367 F.2d 182, 183-84 (9th Cir. 1966) (applying Wyoming and California contract law); see also Landberg v. Landberg, 24 Cal. App. 3d 742, 752 (1972). Likewise, acceptance is required to be identical with the offer; it must be unconditional and not add any new terms. Landberg, 24 Cal. App. 3d at 752 (internal citations omitted). "If the optionee changes the terms of the offer embodied in the option agreement the alteration of such terms, or the addition of any condition or limitation, is tantamount to a rejection of the original offer and the making of a counter offer[.]" Id. (internal quotations omitted).

It is undisputed that the Property Option could be exercised by Plaintiff not later than 5:00 p.m. Hawaii Standard Time, September 15, 2008 by delivering to the Trustees a signed written copy of (a) an offer to purchase the Property; and (b) a check payable to escrow Title Guaranty Escrow Services, Inc.

14

("TGES") in Hilo c/o Michael Nagai for $280,000.  (MPSJ, Ex. A at 2, ¶¶ 1-1.1.)

The Property Option further specifies that Plaintiff may deliver written notice of

the exercise by facsimile or other electronic transmission with a confirming copy

sent at the same time by authorized delivery methods, provided that Plaintiff "shall

also make the timely tender" of the $280,000.  (MPSJ, Ex. A at 2, ¶ 1.1.)  Both

parties agree that the Property Option required Plaintiff to deliver a check for

$280,000 to TGES and that within 10 days of receipt of Plaintiff's offer to

purchase, the Hamiltons were to execute and deliver the offer of purchase

document to TGES and open escrow.  (Hamilton Opp'n at 3; MPSJ at 3 & Ex. A at

6, ¶ 3.)

          Both Plaintiff and Hamilton Defendants argue that the Property

Option was validly executed.  (Reply Mem. at 10; Hamilton Opp'n at 1.)

However, both parties disagree on the date on which Plaintiff exercised his option

under the Property Option.  Plaintiff states that the option was exercised "prior to

September 15, 2008 by deposit of the $280,000 and submission of the DROA."

(Reply at 10.)  The Hamiltons state that they did not receive the DROA until

September 16, 2008 and the wire transfer originated by Plaintiff is dated

September 15, 2008, but bears a "Date Send" of September 16, 2008.  (Hamilton

Defendants' Opp'n at 4; MPSJ, Exhibit C.)  The DROA received by the Hamiltons

15

was different than that contemplated by the Property Option because Plaintiff made and initialed changes to the form DROA by writing and crossing out "Komatsu Forklift" from the property excluded from sale in paragraph C-4 and adding "Komatsu Forklift, including farm equip." to the items included in the sale in paragraph C-3.  (Id. at 3, ¶¶ C-3-4; Compl. at 9, ¶ 27.)

Taking the Hamilton Defendants' facts as true, Plaintiff was untimely in his exercise of the Property Option both in his deliverance of the DROA to the Hamiltons and his payment to TGES.  The Property Option stated a definite and specific time and date of 5:00 p.m. Hawaii Standard Time, September 15, 2008 by which the Property Option had to be exercised or the option would lapse. Therefore, because the Property Option was not timely exercised as provided, the option expired and was "of no further force or effect at the end of the option exercise period described in paragraph 1," i.e., 5:00 p.m. Hawaii Standard Time, September 15, 2008.[3]  (Id. at 5, ¶ 1.4.)

Moreover, Plaintiff's purported exercise of the Property Option by submission of the DROA was ineffective as he added terms not contemplated by

---

[3] Plaintiff's "exercise" of the Property Option also failed to conform to the requirements of the Property Option because Plaintiff, unlike contemplated in the agreement, opened escrow in lieu of delivering check to TGES as required by the Property Option.  (See MPSJ, A at 6, ¶ 3.)

the Property Option.  Plaintiff's addition to the DROA contained terms varying

from the Property Option and gave rise to a counter offer by Plaintiff to Hamilton

Defendants and did not constitute a valid exercise of the Property Option.

Landberg, 24 Cal. App. 3d at 752.  As the Hamilton Defendants argue, the

inclusion of the forklift was not in conformance with the Property Option, but was

instead agreed to under the Assets Option.  (Id.; id., Exhibit A at 7, ¶ 3.4; id.,

Exhibit B at 3, ¶ 1.2(a).)  Therefore, even if the Hamilton Defendants agreed to

waive Plaintiff's failure to timely exercise his option or the form in which the

option was exercised, Plaintiff's exercise of the Property Option failed because

Plaintiff did not accept the Property Option on its identical terms.

Accordingly, Plaintiff's DROA constituted an offer for the Property

independent of the Property Option to be accepted or rejected by the Hamiltons.

B.     Exercise of the Asset Option

An option to purchase or sell is not a contract to purchase or sell as an

optionee has the right to accept or to reject the offer, in accordance with its terms,

and is not bound.  Sorensen, 907 P.2d at 752 (citing Black's Law Dictionary 1094

(6th ed. 1990) (citations omitted).  The optionor's evasion or prevention of

exercise of the option excuses the optionee's tender of performance and other

conditions precedent to acceptance.  Servel v. Jamieson, 255 F. 892, 894 (9th Cir. 1919).

The parties agree that Plaintiff never exercised the Asset Option. (Hamilton Opp'n at 4.)  Therefore, because the Asset Option was not timely exercised prior to 5:00 p.m. Hawaii Standard Time, September 15, 2008, it expired and is of no further force or effect.  (MPSJ, Ex. B at 4, ¶ 1.4.)  Moreover, the Asset Option expired prior to when it could have been validly exercised by Plaintiff because the option was not signed by the Hamilton Defendants until February 26, 2009.  (Hamilton Opp'n at 4, 13-15.)

C.     Acceptance of the DROA

It is elementary law that an offer made by an offeror must be unconditionally accepted by the offeree to become a binding contract.  Molina v. Largosa, 465 P.2d 293, 513-14 (Haw. 1970) (Abe, J., dissenting) (citations omitted).  Courts at common law applied the "mirror-image" rule of contracts almost exclusively to all transactions before the advent of the Uniform Commercial Code, Article 2 ("UCC").  Earl M. Jorgensen Co. v. Mark Const., Inc., 540 P.2d 978, 982-83 (Haw. 1975).  The mirror-image rule states that a purported acceptance of an offer which attempted to modify one or more terms of the offer acted as a rejection of the offer and resulted in a counteroffer.  Id.  The UCC

18

modified the mirror image rule for contracts involving the sale of goods.  Id. at 983; HRS § 490:2-102 (this article applies to transactions in goods).  Under the Hawaii Uniform Commercial Code "HUCC," "goods" means all things that are movable and does not include real property, i.e., land.  HRS §490:2-105(1).

The sale of the Property in the instant case is governed by Hawai`i common law.  In re Grayco Land Escrow, Ltd., 559 P.2d at 274; see State Sav. & Loan Ass'n v. Kauaian Dev. Co., 445 P.2d 109, 120 (1968); Cal. Federal Sav. & Loan Ass'n v. Bell, 735 P.2d 499 (Haw. App. 1987).  Therefore the mirror image rule applies to the facts at hand.  See Earl M. Jorgensen Co., 540 P.2d at 982-83.

"[T]he terms proposed in an offer must be met exactly, precisely, and unequivocally for its acceptance to result in the formation of a binding contract."  Siegel v. Warner Bros. Entertainment Inc., 542 F. Supp. 2d 1098, 1137 (C.D. Cal. 2008); Molina v. Largosa, 465 P.2d at 513-14 (Abe, J., dissenting) (citation omitted).  "It is an elementary rule of contract law that there must be a meeting of the minds on all essential elements or terms in order to create a binding contract[.]"  United Public Workers, AFSCME, Local 646, AFL-CIO v. Dawson Int'l., Inc., 149 P.3d 495, 509 (Haw. 2003); Siegel, 542 F. Supp. 2d at 1137 ("The failure to reach a meeting of the minds on all material points prevents the formation of a

contract even if the parties have orally agreed upon some of the terms, or have taken some action related to the contract.") (citation omitted).

Citing California law, the <u>Siegel</u> Court explained: A qualified acceptance constitutes a rejection terminating the original offer and the making of a counteroffer to the original offeror, which must also be unequivocally accepted by the former offeror for a binding contract to be formed.  <u>Siegel</u>, 542 F. Supp. 2d at 1137 (citation omitted).  Further, the subjective and secret intent of an assenting party is irrelevant to determining the contractual intent of the parties.  <u>Earl M. Jorgensen Co.</u>, 540 P.2d at 982 ("Unexpressed intentions are nugatory when the problem is to ascertain the legal relations, if any, between two parties").

1.    Timely acceptance by the Trustees

Plaintiff argues that the DROA failed at formation due to Susan Hamilton's failure to timely accept the DROA.  (MPSJ at 14-16.)  In so arguing, Plaintiff contends that the timely signatures of both Robert and Susan Hamilton were required in order to accept the DROA.  (Reply Mem. at 8.)  Plaintiff argues that the Hamiltons failed to timely execute the DROA as provided by the option agreement, and therefore the DROA failed at formation.  In opposition, Hamilton Defendants argue that Robert Hamilton's signature was all that was necessary to effectuate acceptance of the DROA because sale of the Property requires the

20

Hamiltons to accept in their capacity as Trustees, and only one trustee's signature is needed to bind the Hamilton Trust.  (See Hamilton Facts, Ex. 1 at 16.)  Because the Hamilton Trust, and not Robert and Susan Hamilton individually, had the power to sell the Property, only one Trustee signature was needed to accept the DROA.  Therefore, the date when Susan Hamilton accepted the DROA is immaterial.  Both parties agree that Robert Hamilton, in his capacity as Trustee, accepted the DROA on September 16, 2008.  (MPSJ, Exhibit C.)  However, because the Property Option was never properly exercised, it was not determinative the date by when the DROA could be accepted.  Instead, the DROA itself provided by when acceptance would be effective.

Although not raised by either party, the Court notes that the DROA itself specifically provides that the Buyer, Plaintiff, offers to buy the Property and agrees that the DROA is binding if accepted by Seller, the Trustees, on or before September 15, 2008.  (MPSJ, Ex. C at 2)  The DROA contains a time is of the essence clause.  (Id. at 12, ¶ C-78) ("Except as otherwise provided in this Purchase Contract[,] time is of the essence in the performance by all parties of their respective obligations under this Purchase Contract.").)  The Hamiltons state that they did not even receive the DROA until September 16, which would have been after Plaintiff's offer under the DROA had lapsed.

21

The DROA's September 15, 2008 date of acceptance by the Trustees is likely an error that is the effect of sloppy drafting, which was intended to refer to the date by which Plaintiff had to exercise his option under the Property Option.  Although the Court will not draw inferences from a contract regarding the parties' intent when the contract is definite and unambiguous, in this case it is clear from the parties' actions and pleadings that both parties were operating under the assumption that the Property Option applied and the Trustees therefore had ten days in which to accept the DROA.  See State Farm & Cas. Co. v. Pac Rent-All, Inc., 978 P2d 753, 762 (1999) (citation omitted).  However, this Court need not decide if reformation of the contract to the parties' intent is necessary because, for the reason explained below, the DROA fails on alternate grounds.

   2.   The Hamiltons' Unilateral Changes to the DROA

      Plaintiff's $2.9 million dollar offer under the DROA was for both the Property and a "Komatsu Forklift, including farm equip."  (See Hamilton Opp'n at 11.)   In their acceptance of the DROA, the Hamiltons crossed out part of Plaintiff's offer in paragraph C-3, the "Komatsu Forklift, including farm equip." and initialed their deletion.  (See id.)

Plaintiff argues that the DROA failed at formation under the mirror image rule due to the Hamiltons' unilateral change to the DROA.[4]  (MPSJ at 14-16.)  The Court agrees.  Because the Trustees accepted on terms varying from Plaintiff's offer, their acceptance was a counteroffer as a matter of law that required acceptance by Plaintiff in order to create a contract.

a.      Application of the common law or the HUCC

Hamilton Defendants argue that the UCC, not Hawai`i common law, governs interpretation of the DROA.  (Opp'n at 7-10.)  This Court disagrees.  The HUCC applies only to the sale of goods, HRS § 490:2-102, and although a court may analogize to the UCC's provisions to fill a gap in the common law, such analogy is not necessary where the common law states a principle of law on point.  See Romig v. de Vallance, 637 P.2d 1147 (1981).

The fact that Hawai`i courts have not cited the mirror image rule under common law does not mean that it is no longer a recognized principle of common law.  Earl M. Jorgensen Co., stands for the proposition that the UCC was intended to modify the common law mirror image rule in contracts

_____

[4]Plaintiff moves for facts supported by the affidavit of Robert Hamilton and Hamilton Defendants' Exhibits 1 and 2 be stricken because such papers were not filed by Hamilton Defendants.  (Reply at 6-7.)  Plaintiff is mistaken.  See Affidavit of Kelvin H. Kaneshiro ¶ 3; Hamilton Facts, Ex. 1 & 2.)

for the sale of goods, not for the proposition that the UCC intended to modify the entirety of the common law mirror image rule as characterized by Hamilton Defendants.  540 P.2d at 982-83 (internal citations omitted).

Hamilton Defendants argue that even if the UCC is not applied to the entire DROA, it should at least be applicable to the Hamiltons' modification of Plaintiff's offer as a forklift and farm equipment are moveable goods.[5]  This Court disagrees that the contract is severable.

In a contract for goods and services, courts look to the primary purpose of the contract in order to determine whether or not to apply the common law or the UCC.  To determine whether a contract involving both goods and services such "mixed" or "hybrid" contracts are governed by the UCC or common law, a court must examine the whole transaction and look to the essence or main objective of the parties' agreement or the primary or overall purpose of the transaction.  See Am. Jur. Sales § 37.

---

[5] Defendants cite U.S. v. Haas & Haynie Corp., 577 F.2d 568 (9th Cir. 1978) to support their proposition.  In Haas & Haynie, the Ninth Circuit applied provisions of the HUCC in a case involving both services and goods.  However, the Ninth Circuit explicitly stated that it need not determine whether to apply the UCC or common law because the result would be the same under either.  577 F.2d at 572, n.2.

Courts have used this same test in the case of mixed contracts of goods and real property.  See Pettigrove v. Corvallis Lumber Mfg. Co., Inc., et al., 21 P.2d 198, 198-201 (1933).  A contract for the sale of realty and personalty at a lump sum is prima facie entire.  See id. at 198 (citation omitted.)  In Pettigrove, the court found that the plaintiff was authorized to sell all or none of the real property and personal property, and no part of the purchase price was apportioned to any item; therefore, the contract entire and not severable.  Id. at 201.

The true test is whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever if any promise or set of promises were struck out.  D. Dehan v. A. Innes, 356 A.2d 711 (1976) (citation omitted).  In D. Dehan, the court found that a contract for the sale of a 52 acre gravel pit, a back hoe, a bulldozer, a loader, a dump truck with plow, another truck with plow and a home-made low bed trailer was entire and was predominately a contract for the sale of goods, with real estate representing only a small percentage of the total price agreed upon.  Id. at 716.

Here, Plaintiff's offer was for the entire for the purchase price of the DROA, $2.9 million.  Because the contract was separate from the Property Option, the parties did not bargain separately regarding the forklift and farm equipment.  From the Hamilton Defendants' willingness to complete the

25

Property Option and the DROA without the forklift and farm equipment for $2.9 million, it is evident that the primary purpose and greatest percentage of Plaintiff's offer was for the sale of the land.  Here, Hamilton Defendants wished to sever the contract, but Plaintiff's offer was for the whole—the Property and the forklift including equipment—without any severability in price.  Although the Hamilton Defendants note that the provision modified, the forklift, is a good, the primary purpose of the contract was the sale of real property; if goods were included or requested, they were incidental to the primary purpose of the contract.

> b.      Application of the mirror image rule

In negotiating a contract for the Property, the parties were not bound by the terms of the Property Option, as explained above. Therefore, the fact that Plaintiff's addition of the forklift and farm equipment was "wholly inconsistent with the terms of the Property [Option] which specified that the forklift would be included in the assets of Hula Brothers . . . ," is immaterial to Plaintiff's offer in the DROA.  (See Hamilton Opp'n at 4, 10.)  Further, prior to any prior negotiations did not serve to inform or change Plaintiff's offer.  (See id. at 12, ¶ C-79 ("This Purchase Contract [DROA] constitutes the entire agreement between Buyer and Seller and supersedes and cancels any and all prior negotiations, representations, warranties, understandings or agreements (both

written and oral) of Buyer and Seller.  No variation or amendment of this Purchase

Contract shall be valid or enforceable without written approval by Buyer and

Seller.").)

               For all the reasons above, Hawai`i's common law mirror

image rule applies to the DROA.  The mirror image rule is clear that a purported

acceptance of an offer which attempts to modify one or more terms of the offer acts

as a rejection of the offer and results in a counteroffer.  Earl M. Jorgensen Co., 540

P.2d at 982-83.  Moreover, the DROA provides "Acceptance of Purchase

Contract" or "Counteroffer" boxes, neither of which Trustees checked. (See MPSJ,

Ex. C. at 12 §D.)  The "Acceptance of Purchase Contract" provides that "Seller

agrees to sell the Property at the price and terms offered above . . . ," and evidences

that the DROA also contemplated that acceptance other than that identical to the

offer constitutes a counteroffer.  (Id.)

               In the Hamilton's purported acceptance of the DROA,

the Hamiltons crossed out part of Plaintiff's offer in paragraph C-3, the "Komatsu

Forklift, including farm equip." and initialed their deletion. (See Hamilton Opp'n

at 11.)  Therefore, the Hamiltons' acceptance modified the Plaintiff's offer,

effectively rejecting Plaintiff's offer and creating a counteroffer which must be

accepted by Plaintiff in order to create a valid contract.[6]  It is undisputed that Plaintiff did not accept any counteroffer by the Hamiltons. (Hamiltons' Resp. to Plaintiff's Facts ¶ 25.)

As a matter of law, the DROA failed at formation and no contract exists for the sale of the Property.   However, even if a valid contract had been formed, the contract would have no force or effect because it was conditioned upon the closing of the sale of the Hula Brothers' assets as explained below.

D.     Mutuality Provisions

Even if a contract had been formed under either the Property Option or independently under the DROA, as Plaintiff states, the mutuality clauses in both would independently cause either contract to fail.  (MPSJ at 17.)  This Court agrees.  Unless it has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur.  Restatement (Second) Contracts § 225.

---

[6]Contrary to Hamilton Defendants' assertion, Robert Hamilton's subjective intent to correct or conform the DROA with the Property Option does not bear on whether the change was a counteroffer.  (See Hamilton Opp'n at 10-11.) Moreover, this is not a fact or inference that should be taken as true by the Court as the Hamilton Defendants' argue.  (See id.)  The question of whether or not the change was a counteroffer is a matter of law that is not informed by subjective belief.  For the reasons above, the DROA failed at formation.

Both the Purchase Option and the Asset Option provided for simultaneous closing dates and provided that no party shall have any obligation to deliver any document or take any action contemplated by either agreement unless the Closing on the Asset Option occurred simultaneously with closing on the Property Option.  (MPSJ, Ex. A at 7, ¶ 3.4; id., Ex. B at 9, ¶ 7.4.)  Closing of escrow on both the Property Option and the Asset Option was to occur no later than March 9, 2009.  (Id., Ex. A at 6, ¶ 3.1; id., Ex. B at 8, ¶ 7.1.) Further, the DROA was contingent upon the simultaneous closing of a contract for the Hula Brothers assets.  Addendum "A" to the DROA states: "This agreement is contingent upon the simultaneous closing of Hula Brothers, Inc. Assets for an additional $100,000 . . . ." (MPSJ, Ex. C, Addendum A.)

In their opposition, Hamilton Defendants fail to address the mutuality provision of either the Property Option or the DROA.  By the plain language of both, if the closing contemplated by the Asset Option did not occur simultaneously before March 9, 2009, no party could continue to be bound under contract.  (See MPSJ, Ex. A ¶ 3.4, Ex. B ¶ 7.4.)  Because the Asset Option was not even exercised (Hamilton Opp'n at 4), there can be no enforceable contract under either the Property Option or the DROA.

Accordingly, no valid contract was formed between Plaintiff and the Hamilton Defendants.

E.     Disposition of Plaintiff's escrow deposit

Plaintiff argues that escrow deposits belong to the depositor where the purchase transaction fails in formation.  (MPSJ at 13.) Hamilton Defendants argue that because of Plaintiff's failure to consummate the Property Option, he forfeited his deposit.  (Hamilton Opp'n at 1.)

Specifically, the Hamilton Defendants argue that they are entitled to keep the option payment pursuant to Property Option paragraph 1.4 stating that if the Plaintiff does not timely exercise the Property Option, "the option payment hereunder may be retained by the [Trustees]."  (Hamilton Opp'n at 11 (citing MPSJ, Ex. A at 5, ¶ 1.4).)  Had an option payment been made prior to the expiration of the Property Option, this payment may have been arguably property of the Trustees.   However, because the Property Option expired *before* the option payment, the Property Option agreement no longer had force nor effect over any payment made by Plaintiff.

Hamilton Defendants next argue that the DROA provides that they are entitled to keep the option payment by providing: "In the event that Buyer is in default for failure to perform Buyer's obligations under this Purchase Contract

30

(Seller not being in default), Seller may terminate the Purchase Contract, and . . .

(b) retain the initial deposit and all additional deposits provided herein."

(Hamilton Opp'n at 11-12 (citing MPSJ, Ex. C. at 5, ¶ C-28).)  This provision,

however, is only applicable if there is a valid contract.  Because, as explained

above, there was no valid contract, Plaintiff was not in breach by not being

prepared to close escrow—he was in fact operating in accordance with the

contingency that the closing of Hula Brothers was required in order to close on the

Property.

Also under the DROA, Hamilton Defendants assert that Paragraph 4

of the DROA Addendum A allows them to keep the $280,000 in escrow.

(Hamilton Opp'n at 12.) This paragraph provides:

> If the Option is not timely exercised as provided in this and the
> agreement which is dated August 13, 2008, it shall expire and be of no
> further force or effect and the option payment hereunder shall be
> released to Seller without any further authorization by Buyer."

This paragraph is troubling because as an addendum to the DROA it refers to "the

Option . . . as provided in this and the agreement which is dated August 13, 2008[]

. . . ."  First, no "Option" is provided for in the DROA.  Second, there is no

"agreement which is dated August 13, 2008."  Although the paragraph likely is

referencing the February 13, 2008 Purchase Option, the DROA Addendum cannot

purport to modify the terms of an agreement to which it is not itself a part. Moreover, the Purchase Option expired, as explained above, and is of no further force or effect.

"Where an instrument is deposited as an escrow, it cannot become operative until the conditions on which it is deposited have been performed or the contingency agreed on has happened * * *." Whitlow v. Jennings, 40 Haw. 523 (Haw. Terr. 1954) (citation omitted.). "When the condition upon which an instrument deposited in escrow is to be delivered is not complied with, the depository is obligated to redeliver the instrument to the depositor." 28 Am. Jur. 2d Escrow § 29.

In the instant case, closing of the DROA was conditioned on closing of the Hula Brothers' assets. This condition was not met and Plaintiff is entitled to have the escrowee, TGES, return the escrowed down payment. Therefore, the amount in escrow with interest accrued should properly be released by TGES to Plaintiff subject to Plaintiff's stipulation that $26,000 be held back in escrow pending further proceedings. (MPSJ at 1, 18.) Accordingly, the Court GRANTS Plaintiff's motion for partial summary judgment as to Count I of the Complaint.[7]

---

[7] Plaintiff asserts that the Hamilton Defendants are barred from asserting ownership of the $280,000 because such ownership was not claimed in the
(continued...)

II.     Count III: Recession of the DROA[8]

Because this Court holds there was no valid contract and Plaintiff is entitled to return of his escrow deposit, Plaintiff's claim for recision of a valid contract for the Property is moot.  Additionally, Plaintiff failed to brief the Court on any factual or legal reasons why Plaintiff is entitled to recision of the lease agreement with the Hamiltons.  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., 809 F.2d at 630.  Plaintiff has failed to meet this burden.  Accordingly, the Court DENIES Plaintiff's motion for partial summary judgment as to Count III.

---

[7](...continued)
Hamilton Defendants' Answer or Counterclaim.  (MPSJ at 12.)  Because this Court rules in Plaintiff's favor regarding the $280,000 in escrow, Plaintiff's request is DENIED as moot.

[8]Although Plaintiff moves for summary judgment regarding Counts I, III, V, and X of his Complaint, Plaintiff fails to brief any issues not related to ownership of the $280,000 deposited by Plaintiff in escrow.  Moreover, in response to TGES' Opposition, Plaintiff states that "the only claims that are subject to this Motion for Partial Summary Judgment are with regard to the $280,000.  Whether or not TG is entitled to its attorneys fees and costs . . . are more properly addressed in future briefing[.]"  (Reply at 11.)

III.   <u>Count V: Conversion by the Hamiltons and TGES</u>

Plaintiff has failed to brief the Court on any factual or legal issues regarding TGES' allegedly wrongful refusal to return Plaintiff's $280,000 deposit or the Hamiltons' allegedly wrongful and bad faith refusal to allow TGES to return the money in escrow to Plaintiff.  Accordingly, the Court DENIES Plaintiff's motion for partial summary judgment as to Claim V.

IV.   <u>Count X: Declaratory Judgment against TGES</u>

Plaintiff failed to brief the Court on any factual or legal reasons why Plaintiff's request for partial summary judgment as to Count X should be granted. Accordingly, the Court DENIES Plaintiff's motion for partial summary judgment as to Claim X, except as to the determination that TGES immediately disburse to Plaintiff his escrow deposit of $280,000.

## CONCLUSION

The counts remaining include Counts IV—X.

For the reasons stated above, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment as to Count I and DENIES Plaintiff's Motion for Partial Summary Judgment as to all other Counts except as outlined above.  The Court further ORDERS TGES to release Plaintiff's escrow deposit of $280,000

34

plus interest accrued, subject to Plaintiff's stipulation that $26,000 be held back in

escrow pending further proceedings.

      IT IS SO ORDERED.

      DATED:  Honolulu, Hawaii, December 22, 2009.



_____
David Alan Ezra
United States District Judge

SUNG v. HAMILTON, et al., CV. NO. 09-00212 DAE-KSC; ORDER
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT