IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SHIKWAN SUNG, | ) | CV. NO. 09-00212  DAE-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT EMMETT HAMILTON | ) | |
| and SUSAN WEINERT | ) | |
| HAMILTON, each individually and | ) | |
| as Trustee under The Hamilton Joint | ) | |
| Revocable Trust dated March 7, | ) | |
| 1991; HULA BROTHERS, INC., a | ) | |
| Hawai`i corporation; GREGORY | ) | |
| GADD; TITLE GUARANTY | ) | |
| ESCROW SERVICES, INC., a | ) | |
| Hawaii corporation; JOHN DOES 1- | ) | |
| 10; JANE DOES 1-10; DOE | ) | |
| PARTNERSHIPS 1-10; DOE | ) | |
| CORPORATIONS 1-10; DOE | ) | |
| ENTITIES 1-10; AND DOE | ) | |
| GOVERNMENTAL AGENCIES 1- | ) | |
| 10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART
DEFENDANTS ROBERT EMMETT HAMILTON, SUSAN WEINERT
HAMILTON, AND HULA BROTHERS, INC.'S MOTION FOR SUMMARY
JUDGMENT AS TO PLAINTIFF SHIKWAN SUNG'S REMAINING CLAIMS;
(2) GRANTING DEFENDANTS ROBERT EMMETT HAMILTON AND
SUSAN WEINERT HAMILTON'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AS TO COUNTERCLAIM; AND
(3) GRANTING DEFENDANTS BIG ISLAND LAND CO., LTD.,
AND GREGORY GADD'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing Defendants' motions and the

supporting and opposing memoranda, the Court: GRANTS IN PART AND

DENIES IN PART Defendants Robert Emmett Hamilton, Susan Weinert

Hamilton, and Hula Brothers, Inc.'s Motion for Summary Judgment as to Plaintiff

Shikwan Sung's Remaining Claims (Doc. # 59); GRANTS Defendants Robert

Emmett Hamilton and Susan Weinert Hamilton's  Motion for Partial Summary

Judgment as to Counterclaim (Doc. # 61); and GRANTS Defendants Big Island

Land Co., Ltd., and Gregory Gadd's Motion for Summary Judgment (Doc. # 83).

BACKGROUND

Many of the facts of this case have been described in a previous order

by this Court.  (See "Order," Doc. # 54.)  Accordingly, this Court repeats the

background facts only as is necessary to the Court's decision on the motions for

summary judgment and partial summary judgment in the discussion section below. The essential facts of this case are not in dispute.

Defendants Robert Emmett Hamilton and Susan Weinert Hamilton (the "Hamiltons") are trustees under The Hamilton Joint Revocable Trust dated March 7, 1991 ("Hamilton Trust").   (Order at 2.)  As of February 2008, the Hamiltons as trustees of the Hamilton Trust (the "Trustees") owned about 31.174 acres of land identified as Lot 33-B-2 of Land Court Application 1053 (amended), Keaau, District of Puna, Hawai`i, (TMK [3] 1-6-003:104) and an appurtenant 7,500 square foot warehouse and fruit orchard (together, the "Property").  (Id. at 2-3.)  Defendant Hula Brothers, Inc. ("Hula Brothers"), is a fruit packing business on the Property owned and operated by the Hamiltons.[1]  (Id. at 3.)

The Hamiltons negotiated with Shikwan Sung ("Plaintiff" or "Sung") for purchase of the property and the assets of Hula Brothers.  The negotiations involved the consideration of multiple agreements, including: an "Agreement for Keaau Property (TMK [3] 1-6-003-0104) which provided Plaintiff an option to purchase the Property (the "Property Option") for $2.9 million,  (Compl. ¶ 12; MPSJ, Ex. A at 1) and an "Agreement for Hula Brothers, Inc. Assets" (the "Asset

_____

[1] In this Order, the Court will refer to the Hamiltons and Hula Brothers together collectively as the "Hamilton Defendants."

Option"), which provided Plaintiff with an option for the purchase of Hula

Brothers' assets, including a forklift, for $100,000  (MPSJ, Ex. B at 3, ¶ 1.2(a);

Compl. ¶ 12; MPSJ, Ex. A ¶ 3.4.; MPSJ, Ex. B).

On May 12, 2009, Plaintiff filed a Complaint for declaratory judgment

(Count I), breach of contract and anticipatory breach (Count II), rescission (Count

III), and unjust enrichment (Count IV) against the Hamilton Defendants.

("Compl." at 15-17, ¶¶ 52-63, Doc. # 1.)  Additionally, Plaintiff alleged conversion

(Count V) against the Hamiltons and TGES (Id. at 18, ¶¶ 64-69); misrepresentation

(Count VI) and fraudulent misrepresentation (Count VII) against Robert Hamilton,

Hula Brothers, Gregory Gadd ("Gadd") and the Big Island Land Co., Ltd.,

("BILC") (Id. at 18-21, ¶¶ 70-80); fraudulent concealment (Count VIII) and

negligent and intentional interference with contract and prospective advantage

(Count IX) against the Hamilton Defendants, Gadd and BILC (Id. at 21-23, ¶¶ 81-

89); a declaratory judgment (Count X) and breach of contract (Count XI) against

TGES (Id. at 23-4, ¶¶ 90-95); and breach of implied covenant of good faith and fair

dealing (Count XII), HRS Chapter 480 - unfair or deceptive acts or practices

(Count XIII), negligence (Count XIV), conspiracy (Count XV), and punitive

damages (Count XVI) against all defendants (Id. at 24-27, ¶¶ 96-112.).

4

On June 2, 2009, TGES filed a cross-claim against the Hamilton Defendants, Gregory Gadd and BILC alleging non-liability and requesting indemnification, escrow costs, costs of suit and attorneys' fees, inter alia. ("Cross-claim," Doc. # 11.)  On June 17, 2009, the Hamilton Defendants counterclaimed against Plaintiff alleging Plaintiff caused damage to the Property, that the Hamiltons are entitled to retain the $20,000.00 lease amount paid by Plaintiff, and that the monies held in escrow by TGES be applied toward these amounts. ("Counterclaim" at 7, Doc. # 12.)

On August 20, 2009, Plaintiff filed a Motion for Partial Summary Judgment on Counts I, III, V, and X of Plaintiff's Complaint.  (Doc. # 30.)  On December 22, 2009, after a hearing on the Plaintiff's Motion, the Court issued an Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment.  (See Order, Doc. # 54.)

On February 3, 2010, the Hamilton Defendants filed a Motion for Summary Judgment as to Plaintiff's remaining claims.  ("MSJ," Doc. # 59.)  On the same day, the Hamiltons filed a Motion for Partial Summary Judgment as to their Counterclaim.  ("MPSJ," Doc. # 61.)  On March 4, 2010, Defendants BILC and Gadd filed a Motion for Summary Judgment.  ("BILC/Gadd MSJ," Doc. # 83.) On March 29, 2010, BILC and Gadd filed statements of no opposition as to the

5

Hamilton MPSJ and MSJ.  (respectively, Docs. ## 101, 102.)  Also on March 29,

2010, Plaintiff filed an opposition to the BILC/Gadd MSJ ("Opp'n to BILC/Gadd

MSJ," Doc. # 103),  the Hamilton MPSJ ("Opp'n to MPSJ," Doc. # 105), and the

Hamilton MSJ.  ("Opp'n to MSJ," Doc. # 106.)  On April 5, 2010, BILC and Gadd

filed its Reply in support of the BILC/Gadd MSJ.  ("Reply to BILC/Gadd MSJ,"

Doc. # 115.)  On the same day, the Hamilton Defendants filed their reply to the

Hamilton MPSJ ("Reply to MPSJ," Doc. # 117), and the Hamiltons filed their

reply to the Hamilton MSJ ("Reply to MSJ," Doc. # 116.).

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the

pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't

of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d

1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of

factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317,

323-24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  See id. at

323.  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party.  T.W. Electrical Service, 809 F.2d at 632.

## DISCUSSION

The instant action was filed in the District of Hawaii pursuant to 28 U.S.C. § 1332, diversity jurisdiction.  Therefore, this Court is required to look to the substantive law of Hawai`i.  Erie R.R. v. Tompkins, 304 U.S. 64 (1938).  Sales of land are governed by the law of the state within which it is located.  In re Grayco Land Escrow, Ltd., 559 P.2d 264, 274 (Haw. 1977).  In the absence of controlling state law, a "federal court sitting in diversity must use its own best

7

judgment in predicting how the state's highest court would decide the case." Takahashi v. Loomis Armored Car Serv., 625 F.2d 314, 316 (9th Cir. 1980). "In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions." Id.

The Court shall address all of the motions together according to the remaining counts below. In the interests of clarity, the Court first summarizes the counts contained in Plaintiff's Complaint that are not directly moved on in the instant motions.

I.     Count II: Breach of Contract, Anticipatory Breach; Count III: recession of the DROA; Count X: Declaratory Relief; and Count XI: Breach of Contract

Count II was plead as an alternative to Count I. Because this Court found there was no valid contract for sale of the Property, no contract is in existence to support Plaintiff's claim for breach of contract under Count II. (See Compl. ¶ 55 ("In the alternative, if the Court were to find the existence of a valid and enforceable contract, the Hamiltons and Hula Brothers have materially breached, or anticipatorily breached, such contract.").) As to Count III: recession of the DROA, Plaintiff's claim that he is entitled to recision of the lease agreement with the Hamiltons, this issue is necessarily addressed as part of Plaintiff's defense to the Hamilton's  MPSJ on their counterclaim, infra Section XI.

8

Count X: Declaratory Relief and Count XI: Breach of Contract were plead only against defendant TGES.  TGES is not involved in any of the motions addressed herein.

II.     Count IV: Unjust enrichment against the Hamilton Defendants

The Court will discuss Plaintiff's claim for unjust enrichment together with the Hamilton Defendants' MPSJ on Count III of their Counterclaim. See infra Section XI.

III.    Count V: Conversion against the Hamiltons and TGES

In their instant MSJ, Hamilton Defendants seek summary judgment on Plaintiff's claim of conversion.  The common law tort claim of conversion involves "wrongful dominion over the property of another."  Matsuda v. Wada, 101 F. Supp. 2d 1315, 1321 (D. Haw. 1999) (citing Tsuru v. Bayer, 25 Haw. 693, *2 (Haw. Terr. 1920)); see also Bank of N.Y. v. Fremont Gen. Corp., 523 F.3d 902, 914 (9th Cir. 2008) (stating that "to establish conversion, a plaintiff must show (1) his ownership of or right to possess the property at the time of the conversion, (2) that the defendant disposed of the plaintiff's property rights or converted the property by a wrongful act, and (3) damages.").  In Tsuru, the Supreme Court of Hawai`i defined the tort of conversion as

9

> [a]ny distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it, is a conversion. . . . While therefore it is a conversion where one takes the plaintiff's property and sells or otherwise disposes of it, it is equally a conversion if he takes it for a temporary purpose only, if in disregard of the plaintiff's right. . . . The word "conversion" by a long course of practice has acquired a technical meaning.   It means detaining goods so as to deprive the person entitled to the possession of his dominion over them. . . . Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein[.]

Tsuru, 25 Haw. 693, 1920 WL 830 at *2.  The Tsuru court stated the elements of conversion as: "(1) A taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand."  The Restatement (Second) of Torts defines conversion similarly.  See Restatement (Second) of Torts § 222A; see also Pourney v. Maui Police Dept., County of Maui, 127 F. Supp. 2d 1129, 1146 (D. Haw. 2000).   The Tsuru court further explained that "[c]onversion may be proved by demand and refusal of possession but evidence of this is not necessary if there is other evidence of actual conversion."[2] Id. (quotation omitted).  Demand and

---

[2] The Tsuru court explained: "In actions of trover the general rule recognized by all the authorities is that where the original taking is lawful and there has been no illegal assumption of ownership or illegal user a demand and refusal must be shown as evidence of a disposition to convert to the holder's own use or to divest

(continued...)

10

refusal of possession is the factual context involved in the instant case.  <u>See</u> <u>Pourney</u>, 127 F. Supp. 2d at 1146.

Plaintiff argues that because there was no contractual basis for the deposit of his $280,000, <u>i.e.</u>, the Purchase Option was never exercised, he had a right to immediate possession of his funds in escrow.  (Opp'n to MSJ at 25.) Plaintiff further asserts that the funds were withheld from him for ten months and that, consistent with what is required by case law, he demanded return of the funds and was refused possession by the Hamilton Defendants.  (Opp'n to MSJ at 25; Doc. # 108, Exs. S & T.)  Hamilton Defendants argue that they are entitled to summary judgment as a matter of law because they were justified in detaining the escrow funds in good faith, as there was a reasonable dispute as to the ownership of the funds.  (MSJ at 5-6.)

In support of their position of good faith, Hamilton Defendants rely on cases out of Texas, Nebraska, and Colorado.  <u>See e.g.</u>, <u>Edmunds v. Sanders</u>, 2 S.W. 3d 697, 704 (Tex. App. 1999) (providing that "refusal to deliver property on request may be justified in order to investigate the rights of the parties, and no

---

(...continued)
the true owner of his property."  <u>Tsuru</u>, 25 Haw. 693, 1920 WL 830 at *2 (defining trover as the name of the action which lay at common law for the recovery of damages for the conversion of personal property).

conversion results if such refusal is in good faith to resolve a doubtful matter.");

Zimmerman v. FirsTier Bank, N.A., 585 N.W.  2d 445, 453 (Neb. 1998) (under

Nebraska common law, in the context of the actions of a third party bank, "a bona

fide reasonable detention of property by one who has assumed some duty

respecting it, for the purpose of ascertaining its true ownership, or of determining

the right of the demandant to receive it, will not sustain an action for conversion.")

(citation omitted); Obodov v. Foster, 97 P.2d 426, 428 (Colo. 1939) (stating in the

context of a receivership, "[w]hen refusals are not absolute, but are qualified by

certain conditions which are reasonable, and which are imposed in good faith and

in recognition of the rights of plaintiff, such refusals are an insufficient basis for an

action in conversion.").[3]

     Tsuru and the Hawai`i Supreme Court interpret conversion as an

intentional tort requiring proof of "a constructive or actual intent to injure" in order

---

[3] Applying state law from Nevada and California, courts in the Ninth Circuit have held differently.  See Bailey v. County of San Joaquin, 671 F. Supp. 2d 1167, 1178 (E.D. Cal. 2009) (stating that under California law, conversion is a strict liability tort, whereby the foundation of the action rests neither in the knowledge nor the intent of the defendant; "[s]pecifically, a defendant can be liable for conversion even where he acted in good faith, lacked knowledge of the conversion, or lacked motive to commit the tort." (citations omitted)); In re Ormsby, 591 F.3d 1199, 1205-1206 (9th Cir. 2010) (stating that under Nevada law "conversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge.") (citation omitted)).  This case law is not consistent with Hawai`i case law on conversion.  See Brooks v. Dana Nance & Co., 153 P.3d 1091, 1100 (Haw. 2007).

to find liability.  See Brooks v. Dana Nance & Co., 153 P.3d 1091, 1100 (Haw. 2007) (citing Iddings v. Mee-Lee, 919 P.2d 263, 271 (Haw. 1996) ("the commission of an intentional tort includes a constructive or actual intent to injure") (quoting Pleasant v. Johnson, 325 S.E.2d 244, 249 (N.C. 1985))); see also Pac. Mill Co. v. Enter. Mill Co., 16 Haw. 282, 284, 286 (1904) (approving a jury instruction that "conversion is the exercise of dominion over an article with intent to repudiate the ownership of the true owner and in defiance of his rights")).

Pursuant to this Court's previous Order, no genuine issue of material fact exists as to whether Hamilton Defendants asserted wrongful dominion over the $280,000 escrow funds.  However, there remains a genuine issue of material fact as to whether the Hamilton Defendants possessed  "a constructive or actual intent to injure." See Brooks, 153 P.3d at 1100.  Hamilton Defendants assert that a reasonable dispute as to the ownership of the funds existed and that this dispute negated any bad faith on their part.  Similarly, the Hamilton Defendants state that they only withheld the funds subject to the condition that any real estate commission owed be taken care of, the escrow costs covered or waived, the well be properly shut down, and all claims and rights of Sellers and Buyer be terminated and that such actions were not in bad faith. (Doc. # 60, Ex. 4 at 3.)  Whether such

actions negated any constructive or actual intent to injure Plaintiff is an issue of

fact.

While it is clear now that Plaintiff had a right to the $280,000 escrow

funds because the Purchase Option was not executed, it remains in dispute whether

at the time of Plaintiff's demand, the Hamilton Defendants wrongfully detained the

funds in bad faith and would thereby be liable to Plaintiff.[4]  Accordingly, the Court

DENIES Hamilton Defendants' Motion for Summary Judgment as to Count V.

IV.   Counts VI-VII: Misrepresentation and fraudulent misrepresentation against
      Robert Hamilton, Hula Brothers, Gadd and BILC, and Count VIII:
      Fraudulent concealment against the Hamilton Defendants, Gadd and BILC

Count VI of the Complaint alleges misrepresentation against the

Hamilton Defendants, Gadd and BILC (Compl. ¶¶ 70-74) due to their failure to

notify Plaintiff that the Hamiltons had not signed the Asset Option (Opp'n to MSJ

at 20.)  Similarly, Count VII alleges fraudulent misrepresentation based upon the

---

[4] Pursuant to the Court's previous Order (See Order, Doc. # 54), the $280,000
escrow funds, subject to Plaintiff's stipulation to hold back $26,000, were returned
to Plaintiff.  Under Hawai`i law, "[i]f the plaintiff has accepted the return of the
property this would not bar an action for conversion but would mitigate the
damages and fix the measure thereof at the reasonable value of the property at the
time of the conversion less its value when returned."  Tsuru v. Bayer, 25 Haw. 693,
1920 WL 830, *3 (1920); see also  Larsen v. Pacesetter Systems, Inc., 837 P.2d
1273, 1296-97 (Haw. 1992) (affirming that interest is compensatory in nature, and
is properly given to a plaintiff "from the date of conversion of his property by
defendant until the date judgment is satisfied[.]") (citing Lucas v. Liggett & Myers
Tobacco Co., 461 P.2d 140, 141 (Haw. 1969)).

same factual allegations.  (Compl. ¶¶ 75-80; Opp'n to MSJ at 18-20.)  In Count

VIII of the Complaint, Plaintiff alleges fraudulent concealment against the

Hamilton Defendants, Gadd, and BILC based upon the same factual allegations

and an additional allegation that Susan Hamilton executed the Plaintiff's DROA

past the deadline to do so.[5]  (Compl. ¶¶ 81-87)  Plaintiff's claim for fraudulent

concealment is closely related to his claim for fraudulent misrepresentation.

Intentional (or fraudulent) and negligent misrepresentation[6] both

require the misinformed party to demonstrate reliance on the alleged

misrepresentation.  Under Hawai`i law, the elements of intentional, or fraudulent,

misrepresentation are: "(1) false representations were made by defendants[;] (2)

with knowledge of their falsity (or without knowledge of their truth or falsity) [;]

(3) in contemplation of plaintiff's reliance upon these false representations[;] and

---

[5] Any allegation regarding Susan Hamilton's alleged failure to timely execute Plaintiff's DROA goes to the existence of a contract for the purchase of the Property and is moot due to this Court's finding that no contract for the purchase of the Property existed.  (See Order.)

[6] Plaintiff alleges general misrepresentation in Count VI and separately alleges fraudulent misrepresentation in Count VII.  This Court construes Count VI to be a claim for negligent misrepresentation and Count VII to include intentional and fraudulent misrepresentation.  Hawai`i courts recognize that "intentional" misrepresentation is the same cause of action as "fraudulent" misrepresentation.  See Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Dirs. v. Venture 15, Inc., 115 Haw. 232, 263 (2007) (characterizing  "intentional or fraudulent misrepresentation" as comprising the same elements).

15

(4) <u>plaintiff did rely upon them</u>." <u>Shoppe v. Gucci Am., Inc.</u>, 14 P.3d 1049, 1067

(Haw. 2000).  Negligent misrepresentation, under Hawai`i law,  requires that: "(1)

false information be supplied as a result of the failure to exercise reasonable care or

competence in communicating the information; (2) the person for whose benefit

the information is supplied suffered the loss; and (3) <u>the recipient relies upon the</u>

<u>misrepresentation.</u>" <u>Blair v. Ing</u>, 21 P.3d 452, 474 (Haw. 2001) (citing Restatement

(Second) of Torts § 552) (emphasis added).

        Plaintiff alleges the Hamilton Defendants, Gadd and BILC

misrepresented (knowingly) that the Asset Option had been signed when, in fact, it

had not been signed and Defendants should have known (or knew) that Plaintiff

would reasonably rely on such misrepresentation.  (Compl. ¶¶ 71-73, 76-78.)

Plaintiff states that he relied on the alleged misrepresentation to his detriment by

leasing the Property, drilling the well, and making other preparations for the

development of the bottling facility.  (<u>Id.</u> ¶ 79.)   Hamilton Defendants argue that

Plaintiff cannot assert a claim for misrepresentation because the Court has already

determined that the Plaintiff never effectively exercised the Purchase Option or the

Asset Option.  (MSJ at 7.)  The Court agrees.  The Court finds that there is no

genuine issue of material fact as to Plaintiff's reliance on the alleged

misrepresentation.  As a matter of law, Plaintiff cannot argue that he relied on the

16

Asset Option having been signed because he did not actually comply with the terms of the Asset Option.

Plaintiff's argument is speculative as to what he would have done if not for the alleged misrepresentation. However, the law does not ask the Court to speculate, but instead requires the Court to look as if Plaintiff relied on the misrepresentation, and if so, if such reliance was to his detriment. Plaintiff did not rely on the Asset Option because he did not comply with its mandates. The Asset Option specifically required that it be exercised by 5:00 p.m. Hawai`i Standard time, September 15, 2008, or it expired and was of no further force or effect. (See Order at 18.) Plaintiff failed to timely or properly exercise the Property Option and did not even attempt to exercise the Asset Option. (See Order at 16-17, 18; Doc. # 107, Declaration of Shikwan Sung ¶¶ 19-21.) Plaintiff's assertions of reliance are incongruous with the record. Whether or not it was misrepresented to Plaintiff that the Hamiltons had signed the Asset Option, Plaintiff clearly failed to rely on the fact that he had a viable option due to his failure to even attempt to exercise such option. Therefore, any alleged misrepresentation did not affect Plaintiff's actions with regard to the Property or its purchase.

As to Plaintiff's claim for fraudulent concealment, again, the elements of fraud under Hawai`i law include: (1) false representations made by the

17

defendant; (2) with knowledge of their falsity (or without knowledge of their truth

or falsity); (3) in contemplation of plaintiff's reliance upon them; and (4) plaintiff's

detrimental reliance.  See Larsen v. Pacesetter Systems, Inc., 837 P.2d 1273, 1288

(Haw. 1992) (citation omitted); see also Associated Engineers & Contractors, Inc.

v. State, 567 P.2d 397, 418 (Haw. 1977) ("Fraud in its generic sense, especially as

the word is used in courts of equity, comprises all acts, omissions and

concealments involving a breach of legal or equitable duty and resulting in damage

to another.")  "Fraud can be perpetrated by non-disclosure as well as by affirmative

misrepresentation."  Matsuda, 101 F. Supp. 2d at 1324.

Under Hawai`i law, liability for fraudulent nondisclosure[7] is governed

by the Restatement (Second) of Torts § 551.  See Elliot Megdal & Assocs. v.

Hawaii Planing Mill, Ltd., 814 F. Supp. 898, 904 (D. Haw. 1993); see also

Matsuda, 101 F. Supp. 2d at 1324 (citing Restatement (Second) of Torts § 551).) ;

Molokoa Village Development Co., Ltd. v. Kauai Elec. Co., Ltd., 593 P.2d 375,

381 (Haw. 1979) (citing the Restatement (Second) of Torts § 551)).  The

Restatement (Second) of Torts § 551(1) provides:

---

[7]  In Hawai`i, a claim for fraudulent concealment is often plead in the
context of actions taken by a liable party to conceal a known cause of action.  See
Au v. Au, 626 P.2d 173, 178 (Haw. 1981) (citing HRS § 657-20)).

> One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

Id. Also, although it has not been cited by any Hawai`i court for the proposition, Restatement (Second) of Torts § 550 provides

> One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering.

Id. In the instant case, however, the Court need not address the elements Plaintiff's claim under either statement of the law because here, as above, there is no genuine issue of material fact as to reliance or causation that could result in damages. See Larsen, 837 P.2d at 1288; Associated Engineers & Contractors, 567 P.2d at 418.

As discussed above, any nondisclosure or fraudulent concealment regarding whether the Asset Option was signed clearly did not cause Plaintiff to rely on the viability of the option because he failed to execute the Asset Option as described above. In other words, Plaintiff has not provided any evidence to suggest that his perception that the Asset Option had been signed impacted his failure to properly execute either the Purchase or Asset Option. Without having

executed the Asset Option and taking advantage of its provisions, Plaintiff cannot

argue that he was relying on the existence of a viable option under that agreement.

See Restatement (Second) Torts § 546 ("The maker of a fraudulent

misrepresentation is subject to liability for pecuniary loss suffered by one who

justifiably relies upon the truth of the matter misrepresented, if his reliance is a

substantial factor in determining the course of conduct that results in his loss.").

Accordingly, the Court GRANTS Hamilton Defendants' Motion for

Summary Judgment as to Counts VI, VII, and VIII.  The Court also GRANTS

BILC/Gadd's Motion for Summary Judgment as to Counts VI, VII, and VIII.

V.    Count IX: Negligent and intentional interference with contract and
      prospective advantage against the Hamilton Defendants, Gadd and BILC

In Count IX, Plaintiff alleges negligent and intentional interference

with contract and prospective advantage against the Hamilton Defendants, Gadd,

and BILC.  (Compl. ¶¶ 88-89.)  Plaintiff provides no authority to support a cause

of action for "negligent" interference with contract or prospective business

advantage, and the Court finds no cases in Hawai`i establishing such a cause of

action.  In the Restatement (Second) of Torts, the comments to "negligent

interference with contract or prospective contractual relation" state that

> [t]hus far there has been no general recognition of any liability for a negligent interference, whether it is interference with a third person's performance of his contract with the plaintiff (cf. § 766), with the plaintiff's performance of his own contract (cf. § 766A) or with the plaintiff's acquisition of prospective contractual relations. (Cf. § 766B).

Restatement (Second) of Torts § 766C cmt.  Specifically, the Restatement (Second) of Torts § 766C states:

> One is not liable to another for pecuniary harm not deriving from physical harm to the other, if that harm results from the actor's negligently
>
> (a)    causing a third person not to perform a contract with the other, or
> (b)    interfering with the other's performance of his contract or making the performance more expensive or burdensome, or
> (c)    interfering with the other's acquiring a contractual relation with a third person.

Restatement (Second) of Torts § 766C.  A plaintiff alleging the intentional tort of interference with prospective contractual relations must plead and prove the following:

> (1) a prospective contractual relationship existed between the plaintiff and a third party; (2) the defendant knew of this relationship; (3) the defendant intentionally interfered with the plaintiff's prospective contract; (4) the defendant acted without proper justification; (5) the defendant's interference caused the third party to fail to consummate the prospective contract with the plaintiff; and (6) the defendant's interference caused damages to the plaintiff

<u>Kutcher v. Zimmerman</u>, 957 P.2d 1076, 1088 (Haw. Ct. App. 1998).  Under Count

IX, Plaintiff also alleges interference with prospective business advantage.  The

elements of the intentional tort of tortious interference with prospective business

advantage are:

> (1) the existence of a valid business relationship or a
> prospective advantage or expectancy sufficiently definite,
> specific, and capable of acceptance in the sense that there
> is a reasonable probability of it maturing into a future
> economic benefit to the plaintiff; (2) knowledge of the
> relationship, advantage, or expectancy by the defendant;
> (3) a purposeful intent to interfere with the relationship,
> advantage, or expectancy; (4) legal causation between the
> act of interference and the impairment of the relationship,
> advantage, or expectancy; and (5) actual damages.

<u>Hawaii Medical Ass'n v. Hawaii Medical Service Ass'n, Inc.</u>, 148 P.3d 1179, 1218

(Haw. 2006) (adopted from Restatement (Second) of Torts § 766B (1979))

(citations omitted).

As to each of the causes of action above, the Court may rule as matter

of law because there is no genuine issue of material fact as to causation or proper

justification.  The only evidence that Plaintiff puts forth is that in December 2008,

Plaintiff notified his investors that the Hamiltons intended to renegotiate the terms

of the Asset Option and that as a result of the uncertainty of the agreement, the

investors were no longer interested in proceeding with the project.  (Doc. # 106,

22

Declaration of Shikwan Sung ¶¶ 23-26 & Ex. T.)  As noted above, in order to have timely executed the Property and Asset Options, each option had to have been properly executed by Plaintiff prior to 5:00 p.m. Hawai`i Standard time, September 15, 2008 or both options expired and were of no further force or effect.  (See Order at 16, 18.)  Plaintiff failed to timely exercise either option and this failure was prior to any attempt by the Hamiltons to renegotiate the Asset Option.  (Id.; see also (Doc. # 106, Ex. T.)

The Court's analysis as to Count IX is similar as to Plaintiff's claims of misrepresentation and concealment, Section IV, supra.  Here, Plaintiff alleges that because the Hamilton Defendants did not sign the Asset Option, Plaintiff lost investors that would have subsequently acquired the Property from him.  (See Opp'n to MSJ at 3, 26.)  As explained above, Plaintiff did not properly or timely execute the Purchase or Asset Options.  These failures were prior to any actions alleged by Plaintiff to have caused his loss of financing.  (Doc. # 106, Declaration of Shikwan Sung ¶¶ 23-26 & Ex. T.)  If Plaintiff believed, as he asserts, that the Asset Option was signed by the Hamiltons and effective, then his own failure to properly execute both options independently caused his investor contracts to fail and resulted in his loss of financing. (See Doc. # 106, Ex. T at 1 ("In the event HRWC [Plaintiff's business] does not acquire said property, and then this

23

agreement shall be Null and void."), 3 ("In the event HRWC does not acquire said property, then this agreement shall be null and void.").)  The investor contract expressly provides that Plaintiff will use his best efforts to acquire the Property and the agreement became effective only when such Property was acquired; here, Plaintiff's own actions caused his purchase of the Property to fail.  (See id.; Order at 16-17, 18.)

Moreover, even had Hamilton Defendants signed the Asset Option, Plaintiff's failure to execute the Asset Option (or the Property Option) would have provided the Hamilton Defendants with cause to renegotiate its terms, which is the specific act alleged to have caused the loss of investors.  Therefore, as a matter of law, the Hamiltons were justified in attempting to renegotiate the Asset Option.

Accordingly, the Court GRANTS the Hamilton Defendants' Motion for Summary Judgment as to Count IX.  The Court also GRANTS BILC/Gadd's Motion for Summary Judgment as to Count IX.

VI.   Count XII: Breach of implied covenant of good faith and fair dealing against all Defendants

Hamilton Defendants, Gadd and BILC move for summary judgment on Count XII of Plaintiff's Complaint alleging breach of implied covenant of good faith and fair dealing.  Hamilton Defendants argue that Count XII should be

dismissed because Plaintiff has failed to state a claim upon which relief can be granted.  (MSJ at 10.)  No opposition to Hamilton Defendants MSJ as to Count XII was filed by the Plaintiff.

Hawai`i law recognizes that "every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement."  Best Place, Inc. v. Penn Am. Ins. Co., 920 P.2d 334, 337-38 (Haw. 1996) (citations omitted).  However, Hawai`i courts have not recognized a separate tort cause of action for bad faith or breach of the duty of good faith and fair dealing based upon any type of contract in any circumstances.  Moreover, in Francis v. Lee Enterprises, Inc., 971 P.2d 707, 711-12 (Haw. 1999), the Hawai`i Supreme Court stressed the importance that claims of bad faith be limited to "the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion."  The Hawai`i Supreme Court stated that the limitation on the tort of bad faith was important due to the fact that recovery in tort was very different from contractual remedies.  Id. at 712-13.  Accordingly, the Hawai`i Supreme Court stated that Hawai` law will not allow a recovery in tort "in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract."  Id. at 717.

It is unclear to the Court what Plaintiff is attempting to allege. Plaintiff's claim as to Count XII is vague and states only "[i]n all contracts, including the above-described agreement between Plaintiff and the Hamiltons, there is an implied covenant of good faith and fair dealing." (Compl. ¶ 97.) Plaintiff has not identified which contract, if any, gave rise to the alleged duty of good faith in relation to the Hamilton Defendants, nor has Plaintiff offered evidence that a special relationship existed between the himself and the Hamilton Defendants such that the tort of bad faith should extend to this context. Neither has Plaintiff explained which allegations show conduct that transcends breach of contract. Because Plaintiff offers no evidence in relation to this claim, there can be no genuine issue of material fact. The Court finds that Plaintiff has failed to state a claim upon which relief may be granted.

As to BILC and Gadd, Plaintiff asserts that Gadd owed Plaintiff a duty of due care and violated this duty by failing to properly advise Plaintiff, and cites extensive out of state case law in support of this proposition. (See Opp'n to BILC/Gadd MSJ at 5-16.) The case law cited by Plaintiff relates to a duty of fairness and honesty imposed by out of state courts on real estate brokers to all parties in a real estate transaction—even those to whom they are not agents. (See id. at 5-9.) The facts in those cases involved buyers who "justifiably believe the

seller's broker is also protecting their interest . . . ." <u>Nguyen v. Scott</u>, 253 Cal. Rptr. 800, 806 (1988) (quotation omitted); <u>see</u> e.g.   <u>Ward v. Taggart</u>, 336 P.2d 534 (Cal. 1959).   In the instant case, BILC/Gadd represented the Hamiltons in the attempted sale of the Property and Sung, as a licensed broker in Hawaii, represented himself.  (<u>See</u> Doc. # 60, Ex. 4 ¶ 2.3 (providing a four percent real estate commission to BILC and stating that "Sung is a licenced real estate broker in the State of Hawaii and represents the buyer in this transaction."); <u>see</u> <u>also</u> Doc. # 108 ¶ 4.)  Plaintiff also previously held and currently holds a broker's license in California.  (Doc. # 108 ¶ 4.)

Again, it is unclear to the Court what Plaintiff is attempting to allege. His claim as to Count XII is vague and states only "[i]n all contracts, including the above-described agreement between Plaintiff and the Hamiltons, there is an implied covenant of good faith and fair dealing."  (Compl. ¶ 97.)  Plaintiff's opposition to the BILC/Gadd MSJ also makes factual allegations, including the alleged misrepresentations regarding the Asset Option described above, but fails to allege how Plaintiff was harmed by this conduct, except to infer that it was BILC/Gadd's duty to have provided Plaintiff with the Notice of Intent to exercise the Asset Option.  (<u>See</u> Opp'n to BILC/Gadd MSJ at 10-16.)  The Court finds that even if BILC/Gadd owed Plaintiff a duty of good faith and were required to

27

disclose material facts and not disseminate false information, Plaintiff cites to no factual allegations, duty or legal or contractual obligation that would have required BILC/Gadd to have provided Plaintiff with the Notice of Intent to exercise the Asset Option, especially not in the context of a claim for breach of an implied covenant of good faith and fair dealing. Plaintiff, as his own representative licensed in Hawaii, had an obligation to himself to obtain all necessary documentation and properly execute all contracts. Moreover, BILC/Gadd stood to profit only if the sale closed (Doc. # 60, Ex. 4 ¶ 2.3), and Plaintiff offers no evidence to contradict their assertion and the supporting evidence that they had every incentive to facilitate closing on the deal, not to hinder Plaintiff's acceptance.

It appears to the Court that Count XII is a restatement of his claim for misrepresentation, as addressed by the Court above. (See Opp'n to BILC/Gadd MSJ at 10-16.) Whether or not Plaintiff was justified on relying on Gadd, he did not act in reliance on Gadd's alleged misrepresentations that the Asset Option had been signed because Plaintiff never attempted to execute the option.

Further, Plaintiff's allegations against BILC/Gadd regarding their alleged failure to meet their duty to provide copies of documents to all parties, failure to carefully draft the DROA, failure to properly supervise office staff, and failure to adequately disclose agency relationships are not properly alleged in

28

Count XII and, even assuming the existence of a special relationship, does not

violate a duty that is independently recognized by principles of tort law or

transcend breach of the contract.

Accordingly, the Court GRANTS Hamilton Defendants' Motion for

Summary Judgment as to Count XII.  The Court also GRANTS BILC/Gadd's

Motion for Summary as to Count XII.

VII.   Count XIII: HRS Chapter 480 - unfair or deceptive acts or practices claim against all Defendants

Defendants argue that Plaintiff is precluded from bringing suit for

unfair or deceptive acts or practices pursuant to HRS Chapter 480 because Plaintiff

does not qualify was a "consumer" under the Chapter.  HRS § 480-2 provides in

relevant part:

> (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.
> . . . .
> (d) No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.

HRS § 480-1 defines "consumer" as "a natural person who, primarily for personal,

family, or household purposes, purchases, attempts to purchase, or is solicited to

29

purchase goods or services or who commits money, property, or services in a

personal investment."

To support their arguments, the Hamilton Defendants and Plaintiff

rely on the same Hawai`i case.  In <u>Cieri v. Leticia Query Realty, Inc.</u>, 905 P.2d 29

(Haw. 1995), the Supreme Court of Hawai`i held that:

> [R]eal estate may be purchased with an intent to reside on
> the parcel of property and, concurrently, with an intent to
> hold the property in anticipation of an appreciation in the
> parcel's resale value. Accordingly, absent legislative intent
> to the contrary, we believe the plain and obvious meaning
> of the term "personal investment" includes <u>real estate or
> residences</u>.

<u>Id.</u> at 42 (emphasis added).  Plaintiff seeks to characterize this language as meaning

any real estate purchase by an individual constitutes a "personal investment."  The

Court is not inclined to extend the holding of <u>Cieri</u> so broadly.  The situation

confronted by the court in <u>Cieri</u> was whether the purchase of a <u>home</u> constituted a

personal investment.  Plaintiff presents no case law to support his proposition that

the definition of a personal investment primarily for personal, family, or household

purposes be extended to include real estate purchased with the intent to develop

and operate as a business.

Chapter 480 was specifically designed to protect individual consumers

rather than businesses.  <u>See</u> <u>Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc.</u>, 114

P.3d 929, 942 (Haw. Ct. App. 2005) (referencing a Hawai`i legislature standing committee report and noting that the report "clearly evinced the legislature's intent that the provision be used to protect individual consumers rather than businesses.").  Although Plaintiff commenced his purchase of the Property as an individual, his purchase of the Property was for developing and operating a bottling business, namely Hawaiian Rain Forest Water Co., LLC, and Plaintiff even procured investment financing to do so and negotiated sale of his completed business for six million dollars.  (Doc. # 108, Ex. B; Compl. ¶ 24 ("Plaintiff proceeded to take substantial actions to prepare for the beverage production and bottling business he indented to undertake on the Property, including, but not limited to: (a) arranging for financing; (b) hiring experts and consultants to assist with obtaining a County special permit to allow commercial water bottling and beverage facility on a portion of the Land; (c) applying for and obtaining a well permit from the State Commission on Water Resource Management to drill a well to provide potable water for the beverage production; (d) hiring a well driller to assist with the location and drilling of the well; (e) applying for and obtaining an individual wastewater system permit through the State of Hawai`i Department of Health; (f) applying for a loan guaranty from the U.S. Department of Agriculture; (g) enrolling in the Enterprise Zones Partnership Program under the State of

31

Hawai`i Department of Business Economic Development & Tourism; and (h) making frequent trips to Hawai1i to participate in and oversee the progress of these efforts. . . . Plaintiff, to said Defendants' express knowledge, also obtained investors to finance the transaction."); Opp'n to MSJ at 3 ("Sung had an agreement with the investor/partners that if he succeeded with the venture, they would purchase the completed enterprise from him for $6 million." (citing Doc. # 108, Sung Declaration ¶ 9.).)

        Plaintiff acted as a business in regards to his purchase of the Property and signed contracts which regarded Plaintiff and Plaintiff's relation to the Property as a business.  (See Doc. # 108, Ex. B; Reply to MPSJ, Ex. 6.)  The instant case is clearly distinguished from a situation under Chapter 480 in which a natural person invests in a business venture and is provided protection from unfair or deceptive acts or practices.  See Cieri, 905 P.2d at 42 (citing the relevant legislative history of section 480-1).  Here, Plaintiff was creating his own venture and his investors were relying on his business to provide them with profit.

        Moreover, in addition to being the purchaser, Plaintiff also acted as his own broker in the transaction. (See Doc. # 60, Ex. 4 ¶ 2.3 (providing a four percent real estate commission to BILC and stating that "Sung is a licenced real estate broker in the State of Hawaii and represents the buyer in this transaction.")

32

Additionally, the Court notes that Plaintiff has failed to identify any unfair or deceptive practices attributable to any defendant and on this basis has failed to meet the required pleading requirements.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

For all the reasons above, Plaintiff's investment was for business purposes, not for personal, family, or household purposes.  Therefore, Court finds that Plaintiff's bottling business, for which he sought out and acquired investors, does not constitute a "personal investment" within the meaning of Chapter 480.  As such, Plaintiff does not satisfy the definition of a "consumer" and may not bring a cause of action under HRS Chapter 480-2.

Accordingly, the Court GRANTS the Hamilton Defendants' Motion for Summary Judgment as to Count XIII.  The Court also GRANTS BILC/Gadd's Motion for Summary Judgment as to Count XIII.

VIII.   Count XIV: Negligence against all Defendants

Hamilton Defendants, BILC, and Gadd also move for summary judgment on Count XIV, Plaintiff's claim of negligence against all Defendants. The Hamilton Defendants argue that Plaintiff has not met his pleading burden pursuant to Federal Rule of Civil Procedure 12(b)(6).  (MSJ at 12.)  Consequently, Hamilton Defendants argue that, as a matter of law, Plaintiff's negligence claim

should be dismissed for failure to state a claim upon which relief can be granted because the Complaint fails to explain how the Hamiltons were negligent or how Plaintiff was damaged.  (Id.)  No opposition to Count XIV was filed by Plaintiff.

Pursuant to Fed. R. Civ. P. 12(b)(6), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Review is limited to the contents of the complaint.  See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994).  Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 989 (9th Cir. 2009); Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005). A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).  In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id.; Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).   A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence.  In other words, a plaintiff must allege enough facts to state a claim for relief that is plausible on its face.  See id. at 570.  "[C]onclusory allegations without more are insufficient to defeat a motion to

34

dismiss for failure to state a claim." <u>McGlinchy v. Shell Chem. Co.</u>, 845 F.2d 802, 810 (9th Cir. 1988).

In the Complaint, Plaintiff asserts that the Hamilton Defendants' "aforesaid actions were negligent, careless and reckless and they "knew or should have known that their actions would result in harm to Plaintiff."  (Compl. ¶ 103.) Plaintiff asserts this conclusory allegation without specific reference to which facts involving the Hamilton Defendants support this allegation, in what manner the Hamilton Defendants were negligent, or how Plaintiff was harmed by the Hamilton Defendants.

Under Hawai`i law, the elements of a cause of action for negligence are:

> 1. A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; 2. A failure on the defendant's part to conform to the standard required: a breach of the duty; 3. A reasonably close causal connection between the conduct and the resulting injury; and 4. Actual loss or damage resulting to the interests of another.

<u>Doe Parents No. 1 v. State Dep't of Educ.</u>, 58 P.3d 545, 579 (Haw. 2002) (citing (<u>Dairy Road Partners v. Island Ins. Co., Ltd.</u>, 992 P.2d 93, 114 (Haw. 2000)).

"[I]t is fundamental that a negligence action lies only where there is a duty owed by the defendant to the plaintiff." Bidar v. Amfac, Inc., 669 P.2d 154, 158 (Haw. 1983).  A duty "'is owed only to those who are foreseeably[8] endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous.'" Doe Parents No. 1, 58 P.3d at 583 (citation omitted) (emphasis added).  The test of foreseeability with respect to a duty is "'whether there is some probability of harm sufficiently serious that a reasonable and prudent person would take precautions to avoid it.' . . . The aforementioned test 'does not mean foreseeability of any harm whatsoever, and it is not sufficient that injury is merely possible.'" Pulawa v. GTE Hawaiian Tel, 143 P.3d 1205, 1219 (Haw. 2006) (citations omitted) (emphasis added).

Generally, "'[t]o recover in negligence[,] there must be a showing of harm above and beyond disappointed expectations.  A buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects.'" Ass'n of Apartment Owners of Newtown Meadows v. Venture 15, Inc., 167 P.3d 225,

---

[8] "[T]he issue of foreseeability in the context of duty is a question of law for the court to resolve . . . ." Pulawa v. GTE Hawaiian Tel, 143 P.3d 1205, 1216 (Haw. 2006).

282 (Haw. 2007) (quoting <u>Redarowicz v. Ohlendorf</u>, 441 N.E.2d 324, 327 (Ill. 1982)) (second set of brackets in original) (emphasis added).[9]

    Plaintiff's vague allegations fail to state a claim of negligence against the Hamilton Defendants that may be discerned by this Court.  Moreover, Plaintiff separately claimed negligent misrepresentation as addressed above.  As to BILC/Gadd, Plaintiff alleges: "Gadd/BILC are licensed under Hawaii law and have negligently violated Hawaii Administrative Rules § 16-99-3, including but not limited to, Gadd/BILC's duty to see that copies of all agreements are placed in the hands of all parties involved at the time they are executed."  (Compl. ¶ 103.) These vague allegations fail to state a claim of negligence.  Plaintiff does not allege actual loss, harm, or damage in accordance with BILC/Gadd's actions.  Plaintiff

---

[9]  In addition to the foreseeability of sufficiently serious harm, the court should consider the following factors:

> "whether a special relationship exists, . . . the degree of certainty that the injured party suffered injury, the closeness of the connection between the defendants' conduct and the injury suffered, the moral blame attached to the defendants, the policy of preventing harm, the extent of the burden to the defendants and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."

<u>Pulawa</u>, 143 P.3d at 1214 (quoting <u>Blair v. Ing</u>, 21 P.3d 452, 464-65 (Haw. 2001)).

has failed to even recite the formulaic elements of a cause of action necessary to state a claim of negligence.

Accordingly, the Court GRANTS Hamilton Defendants' Motion for Summary Judgment and Count XIV is hereby dismissed WITHOUT PREJUDICE as to the Hamilton Defendants.  Similarly, the Court GRANTS BILC/Gadd's Motion for Summary Judgment on Count XIV and Count XIV is hereby dismissed WITHOUT PREJUDICE as to the BILC/Gadd.  Plaintiff has until May 30, 2010, to file an Amended Complaint with this Court as to Count XIV.  Any Amended Complaint must comply with the dictates of this Order and cure all deficiencies for Count XIV.

IX.   Count XV: Conspiracy against all Defendants

The Hamilton Defendants also move for summary judgment on Count XV alleging conspiracy against all Defendants.

"'[T]he accepted definition of a conspiracy is a combination of two or more persons [or entities] by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means.'"  Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc., 982 P.2d 853, 881 n.28 (Haw. 1999) (quoting Duplex Printing Press Co. v. Deering, 254 U.S. 443, 466 (1921)).  The plaintiff must allege an

underlying actionable claim because "there can be no civil claim based upon a conspiracy alone . . . ." Weinberg v. Mauch, 890 P.2d 277, 286 (1995); See Ellis v. Crockett, 451 P.2d 814, 822-23 (1969).

"A conspiracy is constituted by an agreement . . . No formal agreement between the parties is essential to the formation of the conspiracy,  for the agreement may be shown 'if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose.'" Marino v. United States, 91 F.2d 691, 694 (9th Cir. 1937) (citation omitted);

> The existence of the joint assent of the parties need not be proved directly. Like any other ultimate fact, it may be found as an inference from facts proved. It is enough if the evidentiary facts and circumstances -- pieced together and considered as a whole -- convince the judicial mind that the parties united in an understanding way to accomplish the fraudulent scheme.

Kazuo Hashimoto v. Halm, NO. 2847, 1953 WL 7576, at *5 (Haw. Terr. Nov. 20, 1953); State v. Yoshida, 361 P.2d 1032, 1042 (1961) ("[t]he existence of a conspiracy may be inferred from the circumstances.").  Accordingly, determining whether a conspiracy exists involves multiple credibility and factual determinations.

The Hamilton Defendants, argue that they are entitled to summary judgment on the conspiracy claim because no actions of the Hamiltons alleged by Plaintiff are unlawful.  However, as noted in Section III of this Order, genuine issues of material fact exist as to whether the Hamilton Defendants are liable to Plaintiff for conversion.  As such, the Court cannot dispose of Plaintiff's conspiracy claim in the instant motion for summary judgment.

There is, however, no genuine issue of material fact regarding the conspiracy claim against BILC/Gadd.  Pursuant to this order, the Court has dismissed all of Plaintiff's claims against BILC/Gadd for any underlying actionable claim. (See supra Sections IV-IX.)

Accordingly, the Court DENIES Hamilton Defendants' Motion for Summary Judgment as to Count XV.  The Court GRANTS BILC/Gadd's Motion for Summary Judgment as to Count XV.

X.      Count XVI: Punitive damages against all Defendants

Finally, the Hamilton Defendants, BILC, and Gadd  move for summary judgment on Count XVI, which asserts a claim for punitive damages.  A claim for punitive damages is not an independent tort, but a remedy that is incidental to another cause of action.  See Ross v. Stouffer Hotel Co. (Hawai`I) Ltd., 879 P.2d 1037, 1049 (1994) (citing Kang v. Harrington, 587 P.2d 285, 291

(Haw. 1978) (holding that a claim for punitive damages "is not an independent tort, but is purely incidental to a separate cause of action"). The Court will construe Plaintiff's claim for punitive damages as a prayer for relief ancillary to his other causes of action. See S. Port Marine, LLC v. Gulf Oil Ltd. Partnership, 234 F.3d 58, 64 (1st Cir. 2000) ("Punitive damages . . . do not constitute a separate cause of action, but instead form a remedy available for some tortious or otherwise unlawful acts.")

Due to the fact that a cause of action remains for conversion and conspiracy against the Hamilton Defendants, it is premature at this time for the Court to rule as to the availability of punitive damages. Ditto v. McCurdy, 947 P.2d 952, 959 (Haw. 1997) ("[O]ne circumstance in Hawai'i that warrants an award of punitive damages is when "there has been some wilful misconduct or that entire want of care which would raise presumption of a conscious indifference to consequences.") (citation and internal quotation marks omitted). As to BILC/Gadd, no underlying cause of action remains that would support a claim for punitive damages.

Accordingly, the Court DENIES WITHOUT PREJUDICE Hamilton Defendants' Motion for Summary Judgment as to Count XVI. The Court GRANTS BILC/Gadd Motion's for Summary Judgment as to Count XVI.

41

XI.   <u>Counterclaim</u>

Hamilton Defendants move for summary judgment on Counts I and III of their Counterclaim against Plaintiff.

A.   Count I

Count I alleges that Plaintiff breached the Property Option, and the Hamilton's are entitled to the costs incurred to fill in an unfinished well on the Property that was drilled by Plaintiff during his lease term.  (MPSJ at 4-5.) Hamilton Defendants contend that pursuant to Section 8 of the Property Option, Plaintiff agreed to bear all costs associated with inspection and testing of the Property during his lease term.  (<u>Id.</u> at 5.)  In support, Hamilton Defendants quote Section 8 that provides that Plaintiff agrees to "indemnify and hold harmless the Hamiltons from any costs, expenses, claims or liability of any kind arising out of the inspection and testing, including property damage, personal injury or death." (<u>Id.</u>; Property Option ¶ 8.)  Hamilton Defendants argue that consent to Plaintiff's inspecting and testing of the land by drilling a well was only granted pursuant to the Property Option.  (Reply to MPSJ at 10.)  Hamilton Defendants argue that in conducting his inspection pursuant to the Property Option, Plaintiff hired a contractor to begin drilling a well, which Plaintiff subsequently abandoned when negotiations regarding the Property fell apart.  (<u>Id.</u>)  As a result, Hamilton

43

Defendants argue they have incurred $26,041.50 in expenses in order to fill the well and Plaintiff has refused to pay these costs, contrary to his contractual obligation.  (<u>Id.</u>)

Plaintiff argues that the Property Option did not require Plaintiff to return the Property to its original condition.  (Doc. # 105, ("Opp'n to MPSJ") at 5.) Citing authority from New Mexico, Kansas, and Louisiana, Plaintiff argues that in the absence of an express provision, a lessee is not obligated to restore the land to its pre-leased condition.  (<u>Id.</u> at 6.)  Plaintiff contends that the record does not support any finding of the parties' intent regarding a covenant to restore because the indemnification provision relates to inspection and testing and the drilling of a well for its use as part of a bottling operation is neither inspection nor testing.  (<u>Id.</u> at 9-11.)  Furthermore, Plaintiff argues that if such a covenant could be implied, it would be a question of fact and not properly entertained in a motion for summary judgment.  (<u>Id.</u> at 9.)  Moreover, Plaintiff maintains that the Hamilton Defendants expressly consented to Plaintiff's drilling of the well and thus are precluded from asserting a duty to restore.  (<u>Id.</u>)  Alternatively, Plaintiff argues that the well was an improvement to the Property and the expenses Defendants incurred to fill the well were unreasonable.  (<u>Id.</u> at 10-11.)  Plaintiff argues that a question of whether Hamilton Defendants were damaged by the well and the reasonableness of their

actions and expenses to fill the well are issues of fact not properly entertained in a

motion for summary judgment.  (Id.)

     The Court finds that Section 8 of the Property Option requires

Plaintiff to indemnify Hamilton Defendants from all costs arising from Plaintiff's

inspection and testing of the Property.  Section 8 of the Property Option states:

> Upon the signing of this agreement by all parties, Sung shall be
> entitled to conduct such inspection and testing for the Property as he
> wishes upon reasonable advance notice to Hamiltons.  All such
> inspection and testing shall be at the sole cost of Sung.  Sung will
> indemnify and hold harmless Hamiltons from any costs, expenses,
> claims or liability of any kind (including reasonable attorneys' fees)
> arising out of the inspection and testing, including property damage,
> personal injury or death. . . . .

     It is well established that "the construction and legal effect to be given

a contract is a question of law to be decided by the court."  Reed & Martin, Inc. v.

City & County of Honolulu, 440 P.2d 526, 527 (Haw. 1968) (citation omitted).  In

Hawai`i, "it is established that the court's function is to construe and enforce

contracts made by the parties, not to make or alter them."  Heatherly v. Hilton

Hawaiian Village Joint Venture, 893 P.2d 779, 793 (Haw. 1995) (citation omitted).

"Absent an ambiguity, contract terms should be interpreted according to their

plain, ordinary, and accepted sense in common speech."  Whether a contract is

ambiguous is a question of law.  Brown v. KFC Nat'l Management Co., 921 P.2d

45

146, 160 (Haw. 1996) (citation omitted).  "Ambiguity exists only when the contract taken as a whole is reasonably subject to differing interpretation."  County of Kaua`i v. Scottsdale Ins. Co., Inc., 978 P.2d 838, 844 (Haw. 1999) (citation omitted).

The Court finds that Section 8 is not ambiguous.  The language of the section clearly states that Sung will "indemnify and hold harmless Hamiltons from any costs, expenses, claims or liability of any kind (including reasonable attorneys' fees) arising out of the inspection and testing, including property damage . . . ." This is not an implied covenant, but an express provision of the contract agreed to by the parties.  Plaintiff expressly agreed to indemnify the Hamiltons from any costs, expenses arising out of the inspection and testing, including property damage.

"The general obligation of the lessee to repair and his covenants to do so are not to be enlarged beyond their fair intent, and the tenant should not be held responsible for any damages in case of injury or destruction not anticipated, contemplated or intended when the lease was made, and the usual and commonly accepted meaning of the words used in the ordinary transactions of life should be given to the language used in the covenant."  Orient Ins. Co. v. Pioneer Mill Co., 27 Haw. 698, 1924 WL 2881, *3 (Haw. Terr. 1924)  (quotation omitted).

Moreover, under Hawai`i law, independently of express covenant, "a lessee is obligated to return leased premises at the termination of a tenancy in substantially the same condition as at the inception of a lease, subject to reasonable use." See Schimmelfennig v. Grove Farm Co., 41 Haw. 124, 1955 WL 8784, *3 (Haw. 1955). Section 8 obligated Plaintiff to return the Property upon the end of the Lease term without property damage, i.e, in substantially the same condition as he received it, subject to normal deterioration and wear and tear. See Lee v. Hwang, 165 P.3d 1048, 2007 WL 967112, *5 (Hawai`i App. 2007) (unpublished decision).

Moreover, the Court finds that Plaintiff has failed to raise a genuine issue of material fact regarding whether the drilling of the well was an inspection or testing activity. Under the Property Option, drilling a well falls within Section 8 as an inspection and testing activity. Section 2.5 of the Property Option explicitly states that the Hamilton Defendants do not warrant the suitability of the land for Plaintiff's expressed purpose of creating a bottling facility (Doc. # 108, Declaration of Shikwan Sung ¶¶ 5-13) and makes Plaintiff "responsible for conducting any inquiry or testing that he wishes to determine such suitability of the Property." Drilling of the well was contemplated by the parties as part of their agreement to allow Plaintiff to assess whether the Property was suited to his purposes. As Plaintiff stated "[t]he purpose of the lease was to prepare the

47

Property for its future intended use in a water bottling operation.  Therefore, I entered into possession of the four acres and with the Hamiltons' knowledge and agreement I drilled a well on the Property."  (Doc. # 108, Declaration of Shikwan Sung ¶ 13.)  It is Section 8 of the Property Option that provides Plaintiff with the right to drill such a well in order to test and inspect the Property's appropriateness as a bottling facility.  Additionally, Hamilton Defendants point to the construction permit for the well which provides that such permit is for "construction and testing of the well only."  (Reply to MPSJ, Ex. 3.)  Plaintiff also tested the soil in conjunction with his effort to drill the well.  (Id., Ex. 4.)  Plaintiff has offered no evidence to the contrary.

Plaintiff argues that Hamilton Defendants consented to Plaintiff drilling the well, and therefore are precluded from asserting a duty to restore.  As discussed above, such consent was subject to Section 8 of the Property Option.  Together, Section 8 and Section 2.5 of the Property Option provide that Plaintiff is responsible for conducting any inquiry or testing that he wishes to determine the suitability of the property at his sole cost, and he will indemnify the Hamiltons from any costs, expenses arising out of such inspection and testing, including property damage.  Had the sale of the Property proceeded as planned, the Hamilton

48

Defendants, as former owners, clearly would have had not action for damage to the Property.

As to damages, the Court finds that Plaintiff has failed to raise a genuine issue of material fact regarding whether Plaintiff's well caused property damage to the Property and whether Hamilton Defendant's actions in filling the well were reasonable.  Plaintiff hired, and subsequently fired, Fred Page Drilling International ("Fred Page") to drill the well on the Property.  (See Reply to MPSJ, Ex. 6 (February 7, 2009 letter from Fred Page Drilling to Plaintiff.)  The record shows that Plaintiff abandoned the well in a "precarious condition."  (See id. (stating that ceasing drilling operations "caused the hole to be left in a precarious condition creating the possibility for contamination from the unsealed 40 feet of the unconsolidated section.") The Court notes that the well was not functioning and was simply a dangerous condition created by Plaintiff on the Property that required either completion or appropriate disposal.  Although Fred Page agreed to seal and secure the top 40 feet, the company stated

> I want to make very clear to Mr. Sung that the 14" steel conductor pipe we are installing to seal off the bagasse will need to be removed . . . .  There is no contract in force which obligates [Fred Page] to do any more work for HRFC [Plaintiff's business].  If Mr. Sung decides not to go ahead and drill on down to water level with the 14" diameter, then he will be responsible for all costs and the work to fill the 14" conductor pipe with grout and simultaneously withdraw

> the casing.  The well will be abandoned.  The conductor pipe must be
> removed from the ground, regardless of whether the well is completed
> or not. [Fred Page] is not liable, obligated or responsible for any
> decisions made by HRFC to abandon the well.

(Id.)  Hawai`i Administrative Rules § 13-168-16 governs abandoned wells.

Hawai`i Administrative Rules § 13-168-2 defines an abandoned well as "any well

that has been permanently discontinued."  The rules require owners of abandoned

wells to dispose of the wells in accordance a manner approved by the Commission

on Water Resource Management.  See Haw. Admin. R. § 13-168-16(a) ("The

owner or operator of any well which has been determined by the commission or

voluntarily declared by the owner or operator to be abandoned as defined in §

13-168-2, after written notification, shall be required, at owner's or operator's

expense, to re-case, cement, plug back, cap, or otherwise repair the well or fill and

seal the well with cement in a manner approved by the commission.").  Fred Page

confirmed that the well was filled-in per the specifications of the Commission.

(See Reply to MPSJ, Ex. 7 (April 20, 2009 letter from Fred Page to the

Hamiltons).)

    Before filling in the well, however, Hamilton Defendants attempted to

include Plaintiff in the decision for how to dispose of the well that Plaintiff

abandoned in a precarious condition.  (See Reply to MPSJ, Exs. 8-11.)  In addition

50

to the fact that the well was not functional and was in a precarious condition, Hamilton Defendants had no desire for a well on the Property and therefore no desire to pay for the well's completion.  (See id; see also id., Declaration of Robert Emmett Hamilton ¶ 5.)   Alan Okamoto, attorney for the Hamiltons, requested Plaintiff's input on two separate occasions and provided Plaintiff with the final estimate to fill-in the well.  (See Reply to MPSJ, Exs. 8-11.)  In response to these requests and the final estimate, Plaintiff's attorney, Donald Cooper, stated "What your clients do with the well is up to them.  They do not need Mr. Sung's agreement or approval."  (See id., Ex. 11 (April 10, 2009 letter from Cooper to Okamoto.)  Although Plaintiff asserts that Hamilton Defendants should have capped the well, and that such a determination should be left to the jury, Plaintiff waived any right to challenge the manner in which the well was resolved.  "A waiver 'may be expressed or implied[,]' and '[i]t may be established by express statement or agreement, or by acts and conduct from which an intention to waive may be reasonably inferred.' " See Coon v. City & County of Honolulu, 47 P.3d 348, 376 (Haw. 2002) (defining waiver as "an intentional relinquishment of a known right, a voluntary relinquishment of rights, and the relinquishment or refusal to use a right.") (quotation omitted, emphasis added).  "To constitute a waiver, there must have existed a right claimed to have been waived and the

waiving party must have had knowledge, actual or constructive, of the existence of such a right at the time of the purported waiver." Id. (citation omitted).   While the question whether a valid waiver exists is generally a question of fact, "when the facts are undisputed it may become a question of law." Id. at 376-77 (citation omitted).   Section 8 provided Plaintiff with a contractual obligation to indemnify the Hamiltons for any costs resulting from property damage, and the Hamilton Defendants provided Plaintiff with notice and opportunity to act.   Because of Plaintiff's refusal to do so and express waiver through counsel, Hamilton Defendants's subsequent actions to mitigate those damages and restore the property was in a manner approved by law and pursuant to the Property Option.

Moreover, Plaintiff has offered no evidence besides his own unsupported declaration to establish that the Hamiltons could have, or should, have capped the well instead of filling it.  (Doc. # 108, Declaration of Shikwan Sung ¶¶ 25, 27-28.)  Plaintiff also fails to point to any legal or contractual obligation that would require the Hamiltons to have proceeded in the manner that Plaintiff now asserts.  Although all inferences are decided in favor of the nonmoving party, this Court's review of Ninth Circuit precedent indicates that, when a party's conclusory allegations are entirely unsupported by evidence and are contradicted by opposing evidence, that party has not created a legitimate genuine issue of fact for trial.  The

Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).[10] Hamiltons offer substantial evidence regarding the necessity and reasonableness of their actions in filling the well and also offer Plaintiff's own statements in which he waives any right to direct a course of action. Without more, Plaintiff's unsupported assertions are not enough to create a genuine issue of material fact.

Likewise, Plaintiff offers no evidence to refute Hamilton Defendants' assertion and evidence that the expenses to fill the well were reasonable and necessary. Hamiltons assert that they should be awarded $26,041.50 to be paid by Plaintiff. In support, Hamilton's provide an invoice from Fred Page for $26,041.50, the cost associated with Plaintiff's abandonment of the well. (Doc. #

---

[10] The Court acknowledges that there is some ambiguity in Ninth Circuit case law on this point, as some panels have stated that the fact that a summary judgment affidavit is self-serving bears on its credibility and not on its ability to establish a genuine issue of fact. See, e.g., SEC v. Phan, 500 F.3d 895, 909 (9th Cir. 2007). In the instant case, the evidence provided by the record goes beyond an issue of credibility.

62, Ex. 7.)  This amount corresponds with the estimate provided to Plaintiff.  (See Reply to MPSJ, Ex. 11.)  Plaintiff has offered no evidence to refute this amount and there is no genuine issue of material fact as to whether the Hamiltons spent this amount in order to repair damage to the Property caused by Plaintiff.

For all the reasons above, the Court finds that Plaintiff breached the Property Option and lease agreement by abandoning the well in a precarious condition and refusing to repair the resulting property damage.  Accordingly, the Court GRANTS Hamilton's Motion for Partial Summary Judgment as to Counterclaim as to Count I and finds that the Plaintiff owes the Hamiltons damages in the amount of $26,041.50.

B.      Count III: Declaratory Relief

Count III of the Hamilton Defendants' Counterclaim (Doc. # 12-3) requests a declaration that the Hamilton Defendants are permitted to retain the Plaintiff's $20,000 payment to lease a portion of the Property.   (MPSJ at 6.)  In support of this request, the Hamilton Defendants rely on Section 4.1 of the Property Option which provides that "[i]f the Option is not exercised, then the Hamiltons may retain the lease sum without further obligation to Sung."

In opposition, Plaintiff asserts that Defendants will be unjustly enriched if they are permitted to retain the lease payment.  (Opp'n to MPSJ at 13.)

54

Plaintiff argues a lease agreement was never drafted between the two parties and therefore the term "lease sum" in Section 4.1 of the Property Option is ambiguous. Plaintiff further contends that the Hamilton Defendants' burden of proof to show that a lease existed rather than merely an agreement to lease or a license has not been satisfied.  (Id.)  In relation to this argument, Plaintiff asserts the Property Option contained merely an agreement to lease the Property and therefore Defendants' granted Plaintiff permission to drill a well by license.  (Id. at 15.) Plaintiff argues that, in the absence of a written lease, whether there is a lease or a license is a question of fact based on the intent of the parties and summary judgment is inappropriate.  (Id.)  Because Plaintiff's defense is directly related to his claims for unjust enrichment (Count IV) and rescission (Count III), the Court will discuss both below.

          1.     Existence of a Lease

          Hamilton Defendant's assert that they are entitled to retain the $20,000 payment from Plaintiff pursuant to the Property Option.  (MSJ at 4; MPSJ at 6.)  Section 4.1 of the Property Option provides that "[i]f the Option is not exercised, then the Hamiltons may retain the lease sum without further obligation to Sung."  ("Property Option," Doc. # 60 Ex. 2 at 7.)  Plaintiff argues that because the terms of the lease were never attached to the Property Option, a lease for the

Property was never validly executed.  (See Opp'n to MSJ at 23 (incorporating by reference Plaintiff's Opp'n to MPSJ at 13).)

The Court notes that both Plaintiff and Hamilton Defendants signed the Property Option and that the language of Property Option clearly provides the terms by which the parties agreed and subsequently abided.  By signing the Property Option, the Parties formed a contract as to its terms regardless of whether the Purchase Option was ever properly exercised.  (See Order at 3-4, 14.)   It is clear that the Parties are bound by the terms of the Property Option because the Court expressly ruled that a Purchase Option was not properly executed for failure to abide by its terms.  (See Order at 17.)

The Court finds that a lease was properly formed between the parties.  "While a lease is both a conveyance and a contract, its essence is contractual; accordingly, we review the lease under principles of contract law."  Cho Mark Oriental Food, Ltd. v. K & K Intern., 836 P.2d 1057, 1063 (Haw. 1992) (citing Maui Land & Pineapple Co. v. Dillingham Corp., 674 P.2d 390, 394 (Haw. 1984)).  Absent an ambiguity, contract terms should be interpreted according to their plain, ordinary, and accepted sense in common speech.  See Maui Land, 674 P.2d at 394.  In the instant case, the Property Option contained all terms essential to the lease between the parties, including the names and signatures of the parties, the area for

56

which the Hamiltons were relinquishing possession and special conditions, the

term of the lease, and the lease payment, and special provisions regarding

extension of the lease and condition precedents to the lease.  (See Property Option

¶¶ D, 4-4.3.) See Amjur Landlord § 22 (describing the essential terms of a lease).

        In addition, the fact that additional separate terms of the lease were

not included in the Property Option is irrelevant.  Any additional terms that may

have been included with the lease do not bear on the lease's existence.  "[W]here,

upon all the evidence, but one inference may reasonably be drawn, there is no issue

for the jury."  Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 839 P.2d 10,  (Haw.

1992) (quoting Broad & Branford Place Corp. v. J.J. Hockenjos Co., 39 A.2d 80,

82 (N.J. Sup. 1944); cf. Parker v. Nakaoka, 722 P.2d 1028, 1031 (Haw. 1986)

("When the evidence is so clear that reasonable minds could only come to one

conclusion, it is not error for the trial judge to remove the . . . question from the

jury and to determine the question as a matter of law."); Restatement (Second) of

Contracts § 212 cmt. e (1981) ("[A] question of interpretation is not left to the trier

of fact where the evidence is so clear that no reasonable person would determine

the issue in any way but one.")).  Here, it is undisputed that a the Property Option

57

contained the essential provisions of the lease under which the parties operated,[11]

Plaintiff paid the lease sum, and Plaintiff occupied the and used the four-acre

leased Property.  (See Doc. # 108, Declaration of Shikwan Sung ¶ 13; see also

Property Option ¶ D ("To assist Sung prepare for the purchase, the Hamiltons

agree to provide Sung with an Option to purchase the Property and to initially lease

Sung approximately 4 acres of Land located below the pond as set forth

herewith."), ¶ 3.4 (the lease shall be "under the terms set forth in Exhibit 'B'

attached herein, for the sum of $20,000.00").)

        Although Plaintiff asserts that the lease was a license, Plaintiff offers

no support for this proposition and does not allege that he was not allowed

exclusive possession of the leased land.  Unlike Kiehm v. Adams, 126 P.3d 339,

346 (Haw. 2006) (involving the an informal arrangement whereby the tenant and

man who had been living with her while they had a romantic relationship and

paying half the rent in residence), here, there was a written agreement for a lease

that contained a fixed term and lease payment.   Whether an agreement is a license

or a lease depends on the intention of the parties as ascertained from the nature of

the agreement.  Id.  (citation omitted.)  The Kiehm court explained: "(1) Most

_____

[11]  Plaintiff's current argument to the contrary is inconsistent with Plaintiff's concession that "[t]he agreement to lease was not independent, but an integral part of the Option Agreement."  (Compl. ¶ 15.)

58

importantly, does the grantee have the right to occupy a distinct and separate part

of the premises ( i.e., a definite parcel)?"  Id. (citing Kapiolani Park Preservation

Soc. v. City & County of Honolulu, 751 P.2d 1022, 1029 (Haw. 1988); see also 49

Am. Jur. 2d Landlord and Tenant § 21 ("Exclusive possession of the leased

premises is essential to the character of a lease . . . .  There must be a conveyance

of a definite space in order for a lease, rather, than a license, to exist; both the

extension and the location of the space within the lessor's premises must be

specified.")  Here, the express terms of the lease contained in the Property Option

state that Plaintiff is granted: "approximately 4 (four) acres of land located below

the pond[] . . . . The leased property does not contain any fruit trees of the

orchard." (Property Option ¶ 4.)  See Bush v. Watson, 918 P.2d 1130, 1142 (Haw.

1996).  Further, Section 8, as described above, lends support for the existence of a

lease.  See Kapiolani, 751 P.2d at 1029.

        Plaintiff was even provided with the ability to cancel the Lease within

45 days.  (See id. ¶ 4.3.)  To now argue that there was no lease is disingenuous.

Moreover, Plaintiff in the Addendum A to his purchase contract ("DROA") for the

land acknowledged that he was currently leasing the property and had

"satisfactorily completed his inspections and testing of the property completing his

due diligence inspection." (See Doc. # 30-6, Addendum A.)  Accordingly,

59

Plaintiff has failed to raise a genuine issue of material fact as to the lack of a valid lease on the Property. For all the reasons above, the Court finds that a valid lease was created providing Plaintiff with a definite parcel of land for a fixed term.

Plaintiff argues that the Hamiltons should not be able to retain the lease sum because Defendants' misrepresented the fact that they signed the Asset Option. (Opp'n to MPSJ at 13.) In support, Plaintiff contends that he never would have leased the Property had he known the sale could not go through. (Id.) Because this argument has already been addressed by the Court in favor of the Hamilton Defendants, the Court need not address it again in relation to the counterclaim. If by this argument, Plaintiff is attempting to assert a claim for rescission of the Property Option and lease agreement, this claim is parallel to Plaintiff's misrepresentation and fraud claims. "Hawai'i courts are clearly in accord with the basic contract principle that a party defrauded on a contract may seek rescission of the contract." Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 172 P.3d 1021, 1033 (Haw. 2007). Hawaii law allows rescission if there was "'(1) a representation of a material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies and acts to [his or her] damage.'" Matsuura v. E.I. du Pont de Nemours and Co., 73 P.3d 687, 701 (Haw.

60

2003) (quoting <u>Haw. Community Federal Credit Union v. Keka</u>, 11 P.3d 1, 18 (2000)) (emphasis added); Restatement (Second) Contracts § 164 (1981) ("[i]f a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient").  In the instant order, the Court found that Plaintiff failed to demonstrate facts to establish an essential element—reliance—necessary for Plaintiff's claims of misrepresentation, fraudulent misrepresentation or fraudulent concealment and equally necessary to assert rescission of contract.

For all the reasons above, a valid lease was formed on the terms contained in the Property Option.  Therefore, Plaintiff expressly agreed to the term allowing for Hamilton Defendants' retention of the lease sum if the Option was not executed.  (<u>See</u> Property Option ¶ 4.1 ("[i]f the Option is not exercised, then the Hamiltons may retain the lease sum without further obligation to Sung.")  Accordingly, Pursuant to section 4.1, because Plaintiff did not properly exercise the Property Option (<u>see</u> Order at 16), the Hamilton Defendants may retain the lease sum of $20,000 paid by Plaintiff, subject to Plaintiff's unjust enrichment claim as discussed below.

2.      Unjust Enrichment

61

Plaintiff argues that the Hamilton Defendants' retention of the $20,000 would be unjust.  (See Opp'n to MSJ at 23 (incorporating by reference Plaintiff's Opp'n to MPSJ at 13).)  Claims for unjust enrichment derive from principles of equity.  See Porter v. Hu, 169 P.3d 994, 1007 (Haw. 2007); Hiraga v. Baldonado, 31 P.3d 222, 229 (Haw. 2001).  A valid "claim for unjust enrichment requires only that a plaintiff prove that he or she conferred a benefit upon the opposing party and that the retention of that benefit would be unjust."  Id. (citing Durette v. Aloha Plastic Recycling, Inc., 100 P.3d 60, 74 (2004)).

Hawai`i law has approved "the principle, long-invoked in the federal courts, that 'equity has always acted only when legal remedies were inadequate.'"  Id. (quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 509 (1959)).  The absence of an adequate remedy at law, therefore, is the "necessary prerequisite" to maintaining equitable claims.  Id. (quoting Bd. of Dirs. of the Ass'n of Apt. Owners of Regency Tower Condo. Project v. Regency Tower Venture, 635 P.2d 244, 249 (Haw. Ct. App. 1981)).

Equitable remedies are not available when an express contract exists between the parties concerning the same subject matter.  See id; see also Paracor Fin. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996) (analyzing both California and New York law).  The purpose of the rule is to guard against the

use of equitable remedies to "distort a negotiated arrangement by broadening the scope of the contract." Gibbs-Brower Intern. v. Kirchheimer Bros. Co., 611 F. Supp. 122, 127 (D.C. Ill. 1985) (analyzing Illinois law) (citation omitted).   Where the parties to a contract have bargained for a particular set of rights and obligations, all claims involving those express rights and obligations properly lie in contract law and not in equity.

In their Motion, Hamilton Defendants argue that Plaintiff's unjust enrichment claim should be dismissed as a matter of law because (1) the Hamilton Defendants have not benefitted from any of Plaintiff's actions because they do not intend to construct or operate a bottling facility; (2) they have not received a benefit from the well drilled by Plaintiff on the Property, and moreover Plaintiff abandoned the well and failed to fill it; and (3) the $20,000 lease sum was paid to the Hamilton Defendants pursuant to a valid lease agreement contained in the Property Option.  (MSJ at 3-4.)

As to the Hamilton Defendants first and second arguments, the fact that the Hamilton Defendants filled the well and are pursuing a counterclaim to recover expenses incurred for doing so supports the Defendants' assertions that they did not intend to operate a bottling facility.  (Id. at 4.)  Furthermore, the Court has already found that the Hamiltons were damaged by Plaintiff's actions in

63

abandoning the unfinished well in a precarious condition on the Property, therefore the Hamiltons clearly did not benefit from the well.  As to Hamilton Defendants third argument, the Court has already found a valid lease agreement entitling the Hamiltons to retention of the lease sum.  Therefore, the burden shifts to the Plaintiff to show that there is a genuine issue of material fact.  The Court finds that Plaintiff fails to make a sufficient showing.

To support his argument that the Hamilton Defendants received a benefit from his work in preparation for development of the bottling facility, Plaintiff asserts, without setting forth specific facts or evidence to support his proposition, that in addition to creating the well, Plaintiff obtained a special permit obtained in the Hamilton's name that adds significant value to the property. (Compl. ¶ 24; Opp'n to MSJ at 9.)  However, the Court finds that the permit is specifically for use of the Property as a bottling facility and moreover relies on the existence of a potable well, which the Hamilton Defendants have filled.  (See Doc. # 108, Declaration of Shikwan Sung, Ex. K.)  Plaintiff may not rely on the mere allegations in the pleadings,  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)), and provides nothing but argument in support of this proposition that the Hamilton's have benefitted from Plaintiff's actions.

64

Plaintiff has failed to raise any genuine issue of material fact as to whether Plaintiff conferred a benefit upon the Hamilton Defendants the retention of which would be unjust.  Therefore, the Court may decide the issue as a matter of law.  Because it is well settled in federal courts that equitable remedies are not available when an express contract exists between the parties concerning the same subject matter, the Court finds, as a matter of law, that Plaintiff is not entitled relief under his claim for unjust enrichment against the Hamilton Defendants.

Accordingly, the Court GRANTS Hamilton Defendants' Motion for Summary Judgment as to Count IV.  The Court also GRANTS the Hamilton's Motion for Partial Summary Judgment as to Counterclaim as to Count III.

## CONCLUSION

As set forth herein, the Court GRANTS IN PART AND DENIES IN PART Defendants Robert Emmett Hamilton, Susan Weinert Hamilton, and Hula Brothers, Inc.'s Motion for Summary Judgment as to Plaintiff Shikwan Sung's Remaining Claims (Doc. # 59); GRANTS Defendants Robert Emmett Hamilton and Susan Weinert Hamilton's Motion for Partial Summary Judgment as to

Counterclaim (Doc. # 61); and GRANTS Defendants Big Island Land Co., Ltd.

and Gregory Gadd's Motion for Summary Judgment (Doc. # 83).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 30, 2010.



_____
David Alan Ezra
United States District Judge

SUNG v. HAMILTON, et al., CV. NO. 09-00212 DAE-KSC; ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS ROBERT EMMETT HAMILTON, SUSAN WEINERT HAMILTON, AND HULA BROTHERS, INC.'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF SHIKWAN SUNG'S REMAINING CLAIMS; (2) GRANTING DEFENDANTS ROBERT EMMETT HAMILTON AND SUSAN WEINERT HAMILTON'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTERCLAIM; AND (3) GRANTING DEFENDANTS BIG ISLAND LAND CO., LTD AND GREGORY GADD'S MOTION FOR SUMMARY JUDGMENT